**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **ERIN BULFIN,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Cause No.:** |
| **BECKY RAINWATER, in her** ) | |
| **individual capacity,** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **RENITA HAWKINS, in her individual** ) | |
| **capacity,** ) | |
| ) | |
| **MARYANNE WILLIS, in her** ) | |
| **individual capacity,** ) | |
| ) | |
| **VANESSA DURIS, in her** ) | |
| **capacity,** ) | |
| ) | |
| **PHILIP WAGENKNECHT, in his** ) | |
| **individual capacity,** ) | |
| ) | |
| **and,** ) | |
| ) | |
| **ST. LOUIS COUNTY,** ) | |
| ) | |
|     **Defendants.** ) | |

## COMPLAINT FOR DAMAGES

### NATURE OF CASE

1.    Plaintiff Erin Bulfin brings this Complaint for Damages against five (5)

individual employees, agents, and/or contractors of St. Louis County's Animal Care and

Control ("ACC"), pursuant to 42 U.S.C. § 1983 and Missouri statutory and common law,

and St. Louis County itself, pursuant to theories of municipal liability ("*Monell*"

1

liability).  As alleged herein, on or about December 27, 2019, Daisy, Ms. Bulfin's

beloved family dog, was relinquished to St. Louis County ACC for what Ms. Bulfin

believed was a mandatory and temporary ten (10) day quarantine following a bite

incident.  However, rather than holding Daisy for ten (10) days, the individual

Defendants, acting alone and in concert with others, unlawfully "seized" Daisy by

immediately euthanizing her within minutes of her relinquishment, in clear contradiction

to local ordinances and to St. Louis County's "official" policies.  At no time did Ms.

Bulfin request or authorize ACC or the individual Defendants to euthanize Daisy.  In fact,

Ms. Bulfin and the person temporarily relinquishing Daisy to ACC, for purposes of

complying with state and local quarantine ordinances, both expressly stated in no

uncertain terms that they *did not* want Daisy to be euthanized.  Moreover, in killing

Daisy, these individual Defendants had *actual knowledge* that Ms. Bulfin, and not the

person physically relinquishing Daisy to them, was listed as Daisy's lawful owner.  Yet,

despite this actual knowledge of Ms. Bulfin's identity and potential ownership rights,

these individual Defendants failed to make any attempts to contact or give notice to Ms.

Bulfin that Daisy had been relinquished to them, or of their intention to immediately

euthanize her.  Further, these individual Defendants committed their unlawful actions

pursuant to an open, pervasive, and unlawful practice or custom of deceiving and/or

intentionally misleading those individuals relinquishing dogs and cats, to indicate that

they were requesting "owner requested euthanasia" ("ORE").  Finally, Defendant St.

Louis County and its officials have openly and publicly admitted to their knowledge that

their ACC employees and agents were engaging in these unlawful practices with respect

to ORE process, and have also openly and publicly acknowledged that they have failed to engage in any reasonable efforts to curtail these practices through training, supervision, and/or discipline.  Thus, through their actions, Defendants have, *inter alia*, violated Ms. Bulfin's rights as secured by the Fourth and Fourteenth Amendments to the Constitution of the United States of America and caused her to suffer injuries and damages for which she is entitled to remedy and relief, pursuant to 42 U.S.C. § 1983, as well as under Missouri statutes and common law.

## PARTIES

2.      Plaintiff Erin Bulfin ("Ms. Bulfin") is and was, at all times relevant hereto, a citizen of the United States of American, resident of the State of Missouri, and has maintained her home and primary residence within the geographical boundaries of St. Louis County, Missouri.

3.      Defendant Becky Rainwater ("Defendant Rainwater") is and was, at all times relevant hereto, a citizen of the United States and acting under color of state law, as an employee of St. Louis County, Missouri.  For purposes of this litigation, Defendant Rainwater is named in her individual capacity.

4.      Defendant Renita Hawkins ("Defendant Hawkins") is and was, at all times relevant hereto, a citizen of the United States and acting under color of state law, as an employee of St. Louis County, Missouri.  For purposes of this litigation, Defendant Hawkins is named in her individual capacity.

5.      Defendant Maryanne Willis ("Defendant Willis") is and was, at all times relevant hereto, a citizen of the United States and acting under color of state law, as an

3

employee of St. Louis County, Missouri.  For purposes of this litigation, Defendant Willis is named in her individual capacity.

6.      Defendant Vanessa Duris ("Defendant Duris") is and was, at all times relevant hereto, a citizen of the United States and acting under color of state law, as an employee of St. Louis County, Missouri.  For purposes of this litigation, Defendant Duris is named in her individual capacity.

7.      Defendant Philip Wagenknecht is and was, at all times relevant hereto, a citizen of the United States and acting under color of state law, as an agent and/or contractor of St. Louis County, Missouri.  For purposes of this litigation, Defendant Wagenknecht is named in his individual capacity.

8.      Defendant St. Louis County, Missouri is a body politic, organized and existing pursuant to Missouri law.  On information and belief, Public Health Directors Spring Schmidt, Emily Doucette, and/or Carole Baskin, and/or St. Louis County Executive Sam Page have final policymaking authority for purposes of Ms. Bulfin's claims against St. Louis County.

## JURISDICTION AND VENUE

9.      Jurisdiction is proper to this Court, with respect to Erin Bulfin's federal claims, pursuant to 28 U.S.C. §§1331 and 1343.  Further, this Court has supplemental jurisdiction to hear and decide Ms. Bulfin's state law claims, pursuant to 28 U.S.C. § 1367(a).

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as Defendants are located, and the events giving rise to Ms. Bulfin's claims occurred, within the boundaries of this judicial district.

## FACTUAL ALLEGATIONS

11.     Defendant St. Louis County funds and operates a department of Animal Care and Control ("ACC"), which is responsible for, *inter alia*, enforcement of St. Louis County ordinances relating to animals, including rabies control and housing, and for providing humane care for animals in its custody and control.

12.     Defendant St. Louis County's ACC is under the authority of, and/or a sub-department of, Defendant St. Louis County's Department of Public Health ("DPH").

13.     Defendant St. Louis County's ACC maintains a facility, located at 10521 Baur Boulevard, Olivette, Missouri, where it houses the dogs and cats in its custody and/or possession.

14.     On information and belief, Emily Douchette holds and held, at all times relevant hereto, the title of "Acting Director" of DPH and has final policymaking authority and supervisory responsibility for DPH and ACC.

15.      On information and belief, Spring Schmidt holds and held, at all times relevant hereto, the title of "Acting Director" of DPH and has final policymaking authority and supervisory responsibility for DPH and ACC.

16.     On information and belief, Carole Baskin holds or held, at all times relevant hereto, the title of "Acting Director" of DPH and/or "Director of Communicable

Diseases, Vector and Animal Control" and has or had, at all times relevant hereto, final policymaking authority and supervisory responsibility for DPH and ACC.

17.     On information and belief, DPH is under the authority and control of the Office of the St. Louis County Executive and, as such, current County Executive, Sam Page, holds and held, at all times relevant hereto, final policymaking authority and/or supervisory responsibility for DPH and ACC.

18.     Defendant Vanessa Duris is and was, at all times relevant hereto, an employee of Defendant St. Louis County and remains the ACC director.

19.     Defendants Rainwater, Hawkins, and Willis are and were, at all times relevant hereto, employees of Defendant St. Louis County and assigned to ACC.

20.     On information and belief, Defendant Wagenknecht is and was, at all times relevant hereto, licensed by the State of Missouri to practice veterinary medicine and is employed, pursuant to contract, by Defendant St. Louis County to provide veterinary services to the ACC.

21.     On information and belief, Defendant Duris' husband and Defendant Wagenknecht have mutual business interests in a veterinary services corporation doing business as St. Louis Veterinary Center.

22.     Prior to her death on December 27, 2019, Daisy was the companion animal of Erin Bulfin and Ms. Bulfin had the legal status of Daisy's "owner."

23.     Daisy was a six (6) year-old female canine, of a mixed breed (possibly terrier mix).

24.     On or about December 26, 2019, Daisy was involved in an incident, occurring within the geographical boundaries of St. Louis County, during which Daisy allegedly bit a human being.

25.     Ms. Bulfin came to believe that Missouri law and/or local ordinances required that all dogs involved in alleged biting incidents are required to be quarantined and observed for ten (10) days.

26.     On or about December 27, 2019, Ms. Bulfin contacted Defendant St. Louis County's ACC to inquire about her legal requirements with respect to having Daisy quarantined and to inquire about the quarantine procedures.

27.     On information and belief, during this aforementioned conversation, Ms. Bulfin spoke with Defendant Rainwater.

28.     Defendant Rainwater confirmed to Ms. Bulfin that there was, in fact, a legally required and mandatory ten (10) day bite quarantine protocol that needed to be followed.

29.     Defendant Rainwater informed Ms. Bulfin that she could either bring Daisy to the ACC facility for the ten (10) day quarantine or could attempt to make arrangements with a veterinarian or boarding facility to conduct the ten (10) day quarantine.

30.     Defendant Rainwater did not, at any time, inform Ms. Bulfin that there was a third potential option for Ms. Bulfin to conduct the ten (10) day quarantine in her home.

31.     Ms. Bulfin specifically expressed concerns about leaving Daisy in the ACC facility for ten (10) days, specifically inquired whether Daisy would be safe, and sought assurances that she would not be euthanized.

32.    Defendant Rainwater expressly stated to Ms. Bulfin that Daisy would not be euthanized, as the ten (10) day quarantine was mandatory and that nothing could or would happen until the expiration of that period.

33.    The ten (10) quarantine hold is mandatory, pursuant to St. Louis County Revised Ordinance § 611.140, which provides in pertinent part that "[a]ny dog, cat, puppy or kitten, which has bitten a human, *shall be confined for a clinical observation period of ten (10) days* not including the day the bite occurred." (emphasis added).

34.    On or about December 27, 2019, and a few hours after Ms. Bulfin had spoken to Defendant Rainwater, Edward Nea, Ms. Bulfin's husband, took Daisy to the ACC shelter on behalf of Ms. Bulfin, to temporarily relinquish Daisy to ACC for the mandatory ten (10) day quarantine, for the purpose of complying with their legal responsibilities, as had been explained to Ms. Bulfin by Defendant Rainwater.

35.    In temporarily relinquishing Daisy to ACC, Ms. Bulfin and Mr. Nea did so because they believed that they were legally obligated and required to temporarily relinquish Daisy for a ten (10) day quarantine and by failing to do so, could be subject to legal sanctions, including potential criminal prosecution.

36.    While at the ACC facility, Mr. Nea spoke with Defendant Hawkins.

37.    Mr. Nea expressly stated to Defendant Hawkins that he was there to temporarily leave Daisy with ACC for a ten (10) day quarantine, based on his understanding that he was required to do so, pursuant to St. Louis County ordinances.

38.    Mr. Nea expressly stated to Defendant Hawkins that he did not want or intend for Daisy to be euthanized.

8

39.     Defendants Hawkins assured Mr. Nea that ACC could not and would not euthanize Daisy during the ten (10) day quarantine period.

40.     Defendant Hawkins assured Mr. Nea that he and his family could come visit Daisy during the ten (10) day quarantine, at any time during the facility's business hours.

41.     Defendant Hawkins assured Mr. Nea that Daisy would be safe in a "cage" (presumably meaning kennel) by herself.

42.     An ACC officer assured Mr. Nea that they would "take good care" of Daisy.

43.     On information and belief, Defendant Willis scanned Daisy for a microchip, found that she was registered with a microchip company, and learned from the microchip company that Daisy's registered owner was listed as Erin Nea.

44.     An employee of Defendant St. Louis County, believed to be Defendant Willis, entered a notation on an official St. Louis County document stating: "Additional Intake Notes: 12/27/19, chip traced – Erin Nea" along with an address and telephone number.

45.     Ms. Bulfin has not legally changed her last name to match her husband's last name ("Nea") and is uncertain as to why she was identified as such by the microchip company.

46.     On information and belief, Defendant Willis shared this information regarding Daisy's microchip registration indicating "Erin Nea" as Daisy's owner with Defendants Rainwater and Hawkins.

9

47.     Defendant Hawkins failed to question Mr. Nea regarding Ms. Bulfin's identity or his relationship to "Erin Nea" and failed to ask for any explanation as to why his name was not on Daisy's microchip.

48.     Defendants Rainwater, Hawkins, and/or Willis failed to make any attempts to directly contact Ms. Bulfin ("Erin Nea"), even though her name was the only name listed on the microchip as the person responsible for Daisy.

49.     Pursuant to St. Louis County Revised Ordinance § 611.090: "When an animal is impounded for any of the reasons stated in this section, the Director shall make *all reasonable attempts to notify the person responsible for the animal within forty-eight (48) hours of the impoundment*. Such notice shall also contain information concerning the reason for the impoundment; the location where the impounded animal is kept; and how the person responsible may contact the impoundment facility and the Director. The notice shall also inform such person of his or her right to request a hearing before the Director concerning the appropriateness of the impoundment and any charges and other obligations necessary for return of the animal . . ." *(emphasis added)*

50.     Defendant Hawkins prepared a form entitled "Animal Bite/Injury Reporting Form" regarding the alleged bite incident involving Daisy.

51.     The "Animal Bite/Injury Reporting Form," had a specific place to indicate the "Date Quarantine Ends."

52.     Defendant Hawkins specifically entered the date of January 6, 2020, as the "Date Quarantine Ends," which would have been ten (10) days from the date of the alleged bite, in accordance with Defendant St. Louis County's ordinances.

10

53.     Defendant Hawkins prepared a form entitled "St. Louis County Department of Public Health – Animal Care & Control."

54.     Defendant Hawkins completed this form herself in its entirety, and any information included on the form was added entirely by Defendant Hawkins.

55.     On the form, Defendant Hawkins checked a box marked "(ORE) OWNER REQUESTS EUTHANASIA."

56.     Defendant Hawkins failed to inform Mr. Nea of the fact that she was checking this box, explain the significance of this box, or ask him if he consented to or understood that she was checking this box.

57.     Defendant Hawkins then instructed Mr. Nea to sign in three (3) places on the form which she had completed.

58.     Defendant Hawkins did not, at any time, explain the document to Mr. Nea.

59.     Mr. Nea was upset at having to leave Daisy and complied with Defendant Hawkins' instructions as to where to sign without reading the document, but in any case would have had no reason to believe that the document's content contradicted any of the either he or Ms. Bulfin were been given by Defendants

60.     On information and belief, Defendant Rainwater reviewed the documents that Defendant Hawkins had completed regarding Daisy.

61.     On information and belief, Defendant Rainwater was sitting in an adjacent office where she could both see and hear Defendant Hawkins' interactions with Mr. Rea.

11

62.     The "Authorization for Transfer of Custody of Animal" clause of Defendant St. Louis County's form states, in pre-printed language, that "To my knowledge, no person has been bitten by this animal within the past 10 days."

63.     In having Mr. Nea sign under that language, Defendants Hawkins and Rainwater knew that statement was inaccurate, with respect to Daisy, as Defendant Hawkins had just completed a report regarding an alleged bite that happened on the previous day, on or about December 26, 2019.

64.     The "Authorization for Relinquishment of Rights to Owned Animal" clause of Defendant St. Louis County's form requires that the surrendering owner state that he/she is the "owner or custodian of the below described animal" and to his/her "knowledge, no person has been bitten by this animal within the last ten days."

65.     Defendants Hawkins and Rainwater knew and/or should have known that Mr. Nea was not listed as Daisy's "owner or custodian," due to the fact that the only name listed on the microchip was that of Ms. Bulfin ("Erin Nea").

66.     Defendants Hawkins and Rainwater knew the statement that "no person has been bitten by this animal within the last ten days," was inaccurate with respect to Daisy, as Defendant Hawkins had just completed a report regarding an alleged bite that happened on the previous day, on or about December 26, 2019.

67.     The "Authorization for Relinquishment of Rights to Owned Animal for Purposes of Euthanasia" clause of Defendant St. Louis County's form requires that the surrendering owner state that he/she is the "owner or custodian of the below described

animal" and to his/her "knowledge, no person has been bitten by this animal within the last ten days."

68.     Defendants Hawkins and Rainwater knew and/or should have known that Mr. Nea was not listed as Daisy's "owner or custodian," due to the fact that the only name listed on the microchip was that of Ms. Bulfin ("Erin Nea").

69.     Defendants Hawkins and Rainwater knew the statement that "no person has been bitten by this animal within the last ten days," was inaccurate, with respect to Daisy, as Defendant Hawkins had just completed a report regarding an alleged bite that happened on the previous day, on or about December 26, 2019.

70.     On information and belief, as soon as Mr. Nea left, Defendant Rainwater immediately spoke to Defendants Wagenknecht and Duris regarding Daisy.

71.     On information and belief, Defendant Rainwater informed Defendants Wagenknecht and Duris that Daisy had been surrendered as a "bite case."

72.     On information and belief, Defendant Wagenknecht told Defendant Rainwater that he could perform "one more ORE" before he left, or words to that effect.

73.     On information and belief, Defendant Wagenknecht said that he would euthanize Daisy if "someone could help him" but that it had to be *quick*," as he was getting ready to leave, or words to that effect.

74.     On information and belief, both Defendants Wagenknecht and Duris were aware of the mandatory ten (10) day quarantine requirement.

75.     Defendant Duris made no efforts to stop Defendant Wagenknecht from euthanizing Daisy, despite having knowledge of the mandatory ten (10) quarantine requirement.

76.     In relinquishing Daisy, neither Ms. Bulfin nor Mr. Nea requested that Daisy be euthanized nor had any intention to request that she be euthanized.

77.     In relinquishing Daisy, Mr. Nea thought he was doing so temporarily for ten (10) days and for the purposes of complying with the legal requirements of St. Louis County ordinances.

78.     On information and belief, Defendant Wagenknecht, with full knowledge and approval of Defendant Duris, did find time for one more "quick" euthanasia, and euthanized Daisy just minutes after Mr. Nea had left.

79.     As of the evening of December 27, 2019, Mr. Nea and Ms. Bulfin believed that Daisy was still alive and at the ACC facility.

80.     On or about the evening of December 27, 2019, Ms. Bulfin learned for the first time that St. Louis County ordinances did offer the option of allowing her to conduct Daisy's mandatory ten (10) day quarantine in her home.

81.     On or about the morning of December 28, 2019, Ms. Bulfin went to the ACC facility to request a home quarantine of Daisy and with the intent to retrieving Daisy from the facility.

82.     In going to the ACC facility, on or about December 28, 2019, Ms. Bulfin brought Daisy's leash with her with the expectation that she would be leaving with Daisy, whom she believed to be still alive.

14

83.     In going to the ACC facility, on or about December 28, 2019, Ms. Bulfin was completely unaware that Daisy had been killed the prior day.

84.     Once at the facility, Ms. Bulfin spoke with Defendants Rainwater and Hawkins who informed her for the first time that Daisy had been killed on the prior day.

85.     As stated by Defendant Rainwater, "**it** [meaning Daisy] was euthanized."

86.     Defendant Rainwater explained to Ms. Bulfin that, since Daisy had been euthanized prior to the expiration of the ten (10) day quarantine period, a "specimen" of Daisy had been sent to the State veterinarian's office for analysis.

87.     As stated in an internal email from Director Duris, this meant "**it** [i.e., Daisy] would have to be decapitated so a specimen could be sent to the lab for testing."

88.     Upon learning that Daisy had been killed, Ms. Bulfin became highly and visibly distraught.

89.     On or about December 27, 2019, at approximately 2:10 p.m., HomeAgain, the microchip identification company, sent Ms. Bulfin an email which read "Chip Chip Hooray! . . . We have great news! We have just received a call from SAINT LOUIS ANIMAL SARE [*sic.*] AND CONTROL letting us know they took in a pet with NOLA's [Daisy's previous name] microchip number . . . We supplied SAINT LOUIS ANIMAL SARE [*sic.*] AND CONTROL with your contact information and they will be contacting you shortly to make arrangements for you to pick up NOLA.  For your convenience, their phone number is (314) 615-0067."

90.     Ms. Bulfin did not see this email until after Defendant Rainwater had informed her that "**it** [i.e., Daisy] was euthanized" almost immediately after being received by ACC.

91.     Despite the fact that they had immediately euthanized Daisy upon intake, Defendants failed to inform HomeAgain of this fact, and allowed HomeAgain send an email to Ms. Bulfin with the "great news" that someone from ACC would be contacting her to make arrangements for her to pick up Daisy.

92.     On or about January 3, 2020 – seven (7) days later – Defendants had still not notified HomeAgain of Daisy's killing and Ms. Bulfin received a second email from HomeAgain, stating "Chip Chip Hooray . . . Recently SAINT LOUIS ANIMAL SARE [*sic.*] AND CONTROL shared with us that a pet with NOLA'S microchip number had been scanned at their facility. *They should have contacted you directly to make arrangements to pick up NOLA as quickly as possible.*"

93.     The receipt of these emails, with the knowledge that Defendants had killed Daisy, caused Ms. Bulfin further and unnecessary grief and distress.

94.     Defendant St. Louis County's ACC, its operations, and its management have long been a matter of public interest and controversy in the St. Louis region and its local media and press.

95.     For a period starting as early as April 2014 and continuing through the present, Defendant St. Louis County's ACC has been the subject of repeated criticisms in both the media and press, and at public meetings.

96.     As the result of this public controversy, Defendant St. Louis County commissioned an audit of ACC and its policies and practices and publicly released the results in approximately July 2019.

97.     The audit was highly critical of ACC's policies and practices regarding "owner requested euthanasia" ("ORE").

98.     On information and belief, Defendant St. Louis County and its ACC's staff's purpose for these ORE policies and practices was to under report its euthanasia numbers, by excluding certain categories of euthanized animals from its statistics, and thereby deceiving the public by inflating their live-adoption success rate, a key benchmark goal for an animal shelter.

99.     As recommended by the audit, and marked "*Immediate – **HIGH PRIORITY***," Defendant St. Louis County was to "[d]iscontinue making all owners of surrendered animals check off and initial the 'ORE' box." Exhibit 1.

100.    As recommended by the audit, "an animal should only be categorized as ORE if it was brought to the shelter by its owner specifically with the intention of having the animal euthanized *due to a severe health problem, an old-age-related problem, or an aggressive temperament*." Exhibit 1.

101.    Daisy had no severe health problems nor old-age-related problems.

102.    In the very short time in which Daisy was in the possession of Defendant ACC, Defendants made no efforts to evaluate her temperament.

103.    There is no indication in Defendant St. Louis County's records giving any indication that Daisy displayed any signs of aggression at the ACC facility and, on

17

information and belief, an ACC officer was able to pet Daisy, and Defendant Hawkins

reportedly commented "on how cute the dog [i.e., Daisy] was."

104.    With respect to owner requested euthanasia (ORE), as provided by the

audit's "Recommendation # 6, "[t]he owner . . . should fill out a newly created ORE form

for each animal they are requesting euthanasia for. (See Appendix C – Sample Request

for Euthanasia for Owned Animal." Exhibits 1 and 2.

105.    In the sample ORE form, prior to euthanizing an animal, facility staff are to

verify whether "**has this animal bitten anyone with the last ten days?**" Exhibit 2

106.    In the sample ORE form (Appendix C), there is a section labeled "To be

filled out by Staff ONLY." Exhibit 2.

107.    Under this "Staff ONLY" section, staff are to specifically answer the

following questions: (1) "Does the animal have a microchip or tag?" and (2) "If yes, has

the chip or tag been traced and does it go back to the owner listed on the form?" Exhibit

2.

108.    As indicated in the "Staff ONLY" section, "*If no, refuse owner request for*

*euthanasia and tell the owner that he/she must fix the discrepancy before euthanasia can*

*be completed.*" Exhibit 2

109.    This "Recommendation # 6" was labeled as "*Immediate – **HIGH***

***PRIORITY**.*" Exhibit 2

110.    Despite knowledge of the audit's findings regarding owner requested

euthanasia and the fact that the audit provided a recommended form and labeled the need

to change the form and policy as "*Immediate – **HIGH PRIORITY**,*" Defendants had not

18

made the recommended changes or adopted the recommended form as of Daisy's death, on or about December 27, 2019.

111.    Defendants euthanized Daisy despite the clear discrepancy between the name listed on Daisy's microchip ("Erin Nea") and the person relinquishing her.

112.    Defendants euthanized Daisy despite their knowledge that she was alleged to have bitten someone within the prior ten (10) day prior, and was therefore subject to a ten (10) day rabies quarantine.

113.    Defendant St. Louis County's officials, senior directors, and final policymakers, including Directors Doucette, Schmidt, and Baskin as well as County Executive Page, were aware of the audit's concerns about ACC's policies and practices regarding owner requested euthanasia.

114.    On information and belief, in July 2019, Spring Schmidt, Director of DPH, publicly acknowledged that she and Defendant St. Louis County were aware of ACC's staff and employee's pervasive misuse of ORE process but decided not to discipline any offending staff or employees due to the extremely widespread, and systemic nature of these problems.  *See* Jeremy Kohler, *Euthanasia Numbers at St. Louis County Pet Center Were Hidden, Audit Says,* ST. LOUIS POST-DISPATCH, Jul. 18, 2019, *available online at* https://www.stltoday.com/news/local/govt-and-politics/euthanasia-numbers-at-st-louis-county-pet-center-were-hidden/article_9766c76a-4678-5d1c-9efd-4d043627a2a8.html ("She [Ms. Schmidt] said that because the problems were systemic, she has not disciplined anyone.").

115.   On information and belief, Defendants Rainwater, Hawkins, Willis, Duris, and/or Wagenknecht were not disciplined or reprimanded either for their previous misuse of the ORE's policies and procedures, or for their roles in Daisy's death.

## LEGAL CLAIMS

### *Count I – Unlawful Seizure in violation of the Fourth and Fourteenth Amendments, cognizable pursuant to 42 U.S.C. §§ 1983 and 1988*

### *Against Defendant Becky Rainwater*

116.   Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

117.   As secured and guaranteed by the Fourth Amendment to the Constitution of the United States of America, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ."

118.   As repeatedly recognized by the federal courts, the seizure of a family pet and dog by killing him/her can give to a claim for an unlawful seizure in violation of the Fourth Amendment. See Zorich v. St. Louis County, *Doc. # 114*, *Order,* p. 33 (E.D. Mo. Dec. 18, 2018)("The Eighth Circuit has held that '[a] dog is considered property for Fourth Amendment purposes.")(citing Andrews v. City of West Branch, Iowa, 454 F.3d 914, 918 (8th Cir. 2006); San Jose Charter of the Hell's Angels v. City of San Jose, California, 402 F.3d 962, 975 (9th Cir. 2005) ("We have recognized that dogs are more than just a personal effect. The emotional attachment to a family's dog is not comparable to a possessory interest in furniture.")(holding that "the killing of a person's dog

20

constitutes an unconstitutional destruction of property absent a sufficiently compelling public interest")(internal citations omitted).

119.    As described herein, Defendant Rainwater, while acting under color of state law and acting both alone and in concert with others, deprived Ms. Bulfin of her rights privileges and immunities as secured by the Fourth Amendment to the Constitution of the United States of America, by and including, but not limited to, unlawfully "seizing" Daisy, through the act of killing her.

120.    As a direct and proximate result of the conduct of Defendant Rainwater, Ms. Bulfin has suffered and continues to suffer injuries and damages, including but limited to: infringements and deprivations of her constitutional rights; great fear for her liberty and security; pain of the mind as well as the body; fear and apprehension; depression, anxiety, and loss of enjoyment of life; loss of faith in her society; and consternation.

121.    The acts of Defendant Rainwater, as described herein, were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Ms. Bulfin, thus entitling her to an award of punitive damages against Defendant Rainwater.

122.    As a result of Defendant Rainwater's unlawful actions and infringements of her protected rights, Ms. Bulfin has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, under 42 U.S.C. §§ 1983 and 1988, against Defendant Becky Rainwater, in her individual capacity, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

### Count II – Malicious Trespass to Personalty, MO. REV. STAT. § 537.330
### Against Defendant Becky Rainwater

123.    Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

124.    Pursuant to MO. REV. STAT. § 537.330, "If any person shall maliciously or wantonly damage or destroy any personal property, goods, chattels, furniture or livestock, the person so offending shall pay to the party injured double the value of the things so damaged or destroyed; and upon an affidavit that said damage or destruction was wantonly or maliciously done, it shall be a good ground for an attachment to issue, as in other cases by attachment."

125.    Daisy was the "personal property" of Ms. Bulfin.

126.    In killing Daisy, Defendant Rainwater maliciously or wantonly destroyed Ms. Bulfin's "personal property," i.e., Daisy.

22

127.    The actions of Defendant Rainwater, as described herein were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of, and/or callously indifferent to, the rights of Ms. Bulfin, thus entitling her to an award of punitive damages against Defendant Rainwater.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, for the tort of malicious trespass against personalty, against Defendant Becky Rainwater, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, punitive damages, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate.

### Count III – Conversion, pursuant to Missouri Common Law
### Against Defendant Becky Rainwater

128.    Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

129.    Ms. Bulfin was the lawful owner of Daisy.

130.    Defendant Rainwater took possession and control of Daisy by intentionally killing her and/or directing that she be killed.

131.    As a result, Defendant Rainwater deprived Ms. Bulfin of her right to possession of Daisy.

132.    As a direct and proximate result of the conduct of Defendant Rainwater, Ms. Bulfin has suffered injuries and damages, including but limited to deprivation of Daisy, pain of the mind and body, depression, anxiety, loss of enjoyment of life, loss of faith in her society, and consternation.

23

133.    The acts of Defendant Rainwater, as described herein, were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of, and/or callously indifferent to, the rights of Ms. Bulfin, thus entitling her to an award of punitive damages to punish Defendant Rainwater and to deter Defendant Rainwater and other from engaging in like conduct in the future.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, for the tort of conversion, against Defendant Becky Rainwater, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, punitive damages, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate.

### Count IV – Intentional Infliction of Emotional Distress
### Against Defendant Becky Rainwater

134.    Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

135.    Defendant Rainwater's unlawful conduct in the killing of Daisy was intentional and/or reckless.

136.    Defendants Rainwater's unlawful conduct in the killing of Daisy was extreme and outrageous.

137.    Defendant Rainwater's unlawful conduct was the cause of extreme emotional distress suffered by Ms. Bulfin.

138.    The acts of Defendant Rainwater, as described herein, were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the

oppression of, and/or callously indifferent to, the rights of Ms. Bulfin, thus entitling her to an award of punitive damages to punish Defendant Rainwater and to deter Defendant Rainwater and other from engaging in like conduct in the future.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, for the tort of intentional infliction of emotional distress, against Defendant Becky Rainwater, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, punitive damages, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate.

### Count V – Negligent Infliction of Emotion Distress
### Against Defendant Becky Rainwater

139.   Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

140.   Defendant Rainwater realized and/or should have realized that her unlawful actions, in the killing of Daisy, created an unreasonable risk of causing Ms. Bulfin to suffer emotional distress.

141.   Defendant Rainwater's unlawful conduct, in the killing of Daisy, caused Ms. Bulfin to suffer emotional distress and injury that is medically diagnosable and/or of sufficient severity to be medically significant.

142.   Defendant Rainwater's unlawful conduct was the cause of severe emotional distress suffered by Ms. Bulfin.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, for the tort of negligent infliction of emotional distress, against

Defendant Becky Rainwater, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate.

### Count VI – Unlawful Seizure in violation of the Fourth and Fourteenth Amendments, cognizable pursuant to 42 U.S.C. §§ 1983 and 1988

### Against Defendant Renita Hawkins

143.     Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

144.     As secured and guaranteed by the Fourth Amendment to the Constitution of the United States of America, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ."

145.     As repeatedly recognized by the federal courts, the seizure of a family pet and dog by killing him/her can give to a claim for an unlawful seizure in violation of the Fourth Amendment. See Zorich v. St. Louis County, *Doc. # 114*, *Order,* p. 33 (E.D. Mo. Dec. 18, 2018)("The Eighth Circuit has held that '[a] dog is considered property for Fourth Amendment purposes.")(citing Andrews v. City of West Branch, Iowa, 454 F.3d 914, 918 (8th Cir. 2006); San Jose Charter of the Hell's Angels v. City of San Jose, California, 402 F.3d 962, 975 (9th Cir. 2005) ("We have recognized that dogs are more than just a personal effect. The emotional attachment to a family's dog is not comparable to a possessory interest in furniture.")(holding that "the killing of a

person's dog constitutes an unconstitutional destruction of property absent a sufficiently compelling public interest")(internal citations omitted).

146.    As described herein, Defendant Hawkins, while acting under color of state law and acting alone and in concert with others, deprived Ms. Bulfin of her rights privileges and immunities as secured by the Fourth Amendment to the Constitution of the United States of America, by and including but not limited to unlawfully "seizing" Daisy, through the act of killing her.

147.    As a direct and proximate result of the conduct of Defendant Hawkins, Ms. Bulfin has suffered and continues to suffer injuries and damages, including but limited to: infringements and deprivations of her constitutional rights; great fear for her liberty and security; pain of the mind as well as the body; fear and apprehension; depression, anxiety, and loss of enjoyment of life; loss of faith in her society; and consternation.

148.    The acts of Defendant Hawkins, as described herein, were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Ms. Bulfin, thus entitling her to an award of punitive damages against Defendant Hawkins.

149.    As a result of Defendant Hawkins's unlawful actions and infringements of her protected rights, Ms. Bulfin has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, under 42 U.S.C. §§ 1983 and 1988, against Defendant Renita Hawkins, in her individual capacity, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

### Count VII – Malicious Trespass to Personalty, MO. REV. STAT. § 537.330
### Against Defendant Becky Rainwater

150.    Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

151.    Pursuant to MO. REV. STAT. § 537.330, "If any person shall maliciously or wantonly damage or destroy any personal property, goods, chattels, furniture or livestock, the person so offending shall pay to the party injured double the value of the things so damaged or destroyed; and upon an affidavit that said damage or destruction was wantonly or maliciously done, it shall be a good ground for an attachment to issue, as in other cases by attachment."

152.    Daisy was the "personal property" of Ms. Bulfin.

153.    In killing Daisy, Defendant Hawkins maliciously or wantonly destroyed Ms. Bulfin's "personal property," i.e., Daisy.

28

154.    The actions of Defendant Hawkins, as described herein were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of, and/or callously indifferent to, the rights of Ms. Bulfin, thus entitling her to an award of punitive damages against Defendant Hawkins.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, for the tort of malicious trespass against personalty, against Defendant Renita Hawkins, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, punitive damages, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate.

### Count VIII – Conversion, pursuant to Missouri Common Law
### Against Defendant Renita Hawkins

155.    Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

156.    Ms. Bulfin was the lawful owner of Daisy.

157.    Defendant Hawkins took possession and control of Daisy by intentionally killing her and/or directing that she be killed.

158.    As a result, Defendant Hawkins deprived Ms. Bulfin of her right to possession of Daisy.

159.    As a direct and proximate result of the conduct of Defendant Hawkins, Ms. Bulfin has suffered injuries and damages, including but limited to deprivation of Daisy, pain of the mind and body, depression, anxiety, loss of enjoyment of life, loss of faith in her society, and consternation.

29

160.    The acts of Defendant Hawkins, as described herein, were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of, and/or callously indifferent to, the rights of Ms. Bulfin, thus entitling her to an award of punitive damages to punish Defendant Hawkins and to deter Defendant Hawkins and other from engaging in like conduct in the future.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, for the tort of conversion, against Defendant Renita Hawkins, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, punitive damages, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate.

## *Count IX – Intentional Infliction of Emotional Distress*
### *Against Defendant Renita Hawkins*

161.    Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

162.    Defendant Hawkins' unlawful conduct in the killing of Daisy was intentional and/or reckless.

163.    Defendants Hawkins' unlawful conduct in the killing of Daisy was extreme and outrageous.

164.    Defendant Hawkins' unlawful conduct was the cause of extreme emotional distress suffered by Ms. Bulfin.

165.    The acts of Defendant Hawkins, as described herein, were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the

oppression of, and/or callously indifferent to, the rights of Ms. Bulfin, thus entitling her to an award of punitive damages to punish Defendant Hawkins and to deter Defendant Hawkins and others from engaging in like conduct in the future.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, for the tort of intentional infliction of emotional distress, against Defendant Renita Hawkins, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, punitive damages, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate.

## Count X – Negligent Infliction of Emotion Distress
## Against Defendant Renita Hawkins

166.    Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

167.    Defendant Hawkins realized and/or should have realized that her unlawful actions, in the killing of Daisy, created an unreasonable risk of causing Ms. Bulfin to suffer emotional distress.

168.    Defendant Hawkins' unlawful conduct, in the killing of Daisy, caused Ms. Bulfin to suffer emotional distress and injury that is medically diagnosable and/or of sufficient severity to be medically significant.

169.    Defendant Hawkins' unlawful conduct was the cause of severe emotional distress suffered by Ms. Bulfin.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, for the tort of negligent infliction of emotional distress, against

Defendant Renita Hawkins, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate.

### Count XI – Unlawful Seizure in violation of the Fourth and Fourteenth Amendments, cognizable pursuant to 42 U.S.C. §§ 1983 and 1988

### Against Defendant Maryanne Willis

170.   Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

171.   As secured and guaranteed by the Fourth Amendment to the Constitution of the United States of America, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ."

172.   As repeatedly recognized by the federal courts, the seizure of a family pet and dog by killing him/her can give to a claim for an unlawful seizure in violation of the Fourth Amendment. See Zorich v. St. Louis County, *Doc. # 114*, *Order,* p. 33 (E.D. Mo. Dec. 18, 2018)("The Eighth Circuit has held that '[a] dog is considered property for Fourth Amendment purposes.")(citing Andrews v. City of West Branch, Iowa, 454 F.3d 914, 918 (8th Cir. 2006); San Jose Charter of the Hell's Angels v. City of San Jose, California, 402 F.3d 962, 975 (9th Cir. 2005) ("We have recognized that dogs are more than just a personal effect. The emotional attachment to a family's dog is not comparable to a possessory interest in furniture.")(holding that "the killing of a person's dog

constitutes an unconstitutional destruction of property absent a sufficiently compelling public interest")(internal citations omitted).

173.   As described herein, Defendant Willis, while acting under color of state law and acting alone and in concert with others, deprived Ms. Bulfin of her rights privileges and immunities as secured by the Fourth Amendment to the Constitution of the United States of America, by and including but not limited to unlawfully "seizing" Daisy, through the act of killing her.

174.   As a direct and proximate result of the conduct of Defendant Willis, Ms. Bulfin has suffered and continues to suffer injuries and damages, including but limited to: infringements and deprivations of her constitutional rights; great fear for her liberty and security; pain of the mind as well as the body; fear and apprehension; depression, anxiety, and loss of enjoyment of life; loss of faith in her society; and consternation.

175.   The acts of Defendant Willis, as described herein, were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Ms. Bulfin, thus entitling her to an award of punitive damages against Defendant Willis.

176.   As a result of Defendant Willis' unlawful actions and infringements of her protected rights, Ms. Bulfin has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, under 42 U.S.C. §§ 1983 and 1988, against Defendant Maryanne Willis, in her individual capacity, and award her any and all compensatory damages, pre-

judgment interest, post-judgement interest, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

### Count XII – Malicious Trespass to Personalty, MO. REV. STAT. § 537.330
### Against Defendant Maryanne Willis

177.    Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

178.    Pursuant to MO. REV. STAT. § 537.330, "If any person shall maliciously or wantonly damage or destroy any personal property, goods, chattels, furniture or livestock, the person so offending shall pay to the party injured double the value of the things so damaged or destroyed; and upon an affidavit that said damage or destruction was wantonly or maliciously done, it shall be a good ground for an attachment to issue, as in other cases by attachment."

179.    Daisy was the "personal property" of Ms. Bulfin.

180.    In killing Daisy, Defendant Willis maliciously or wantonly destroyed and/or participated in the destruction of Ms. Bulfin's "personal property," i.e., Daisy.

181.    The actions of Defendant Willis, as described herein were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of, and/or callously indifferent to, the rights of Ms. Bulfin, thus entitling her to an award of punitive damages against Defendant Willis.

34

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, for the tort of malicious trespass against personalty, against Defendant Maryanne Willis, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, punitive damages, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate.

### Count XIII – Conversion, pursuant to Missouri Common Law
### Against Defendant Maryanne Willis

182.    Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

183.    Ms. Bulfin was the lawful owner of Daisy.

184.    Defendant Willis took possession and control of Daisy by intentionally killing her and/or directing that she be killed**.**

185.    As a result, Defendant Willis deprived Ms. Bulfin of her right to possession of Daisy.

186.    As a direct and proximate result of the conduct of Defendant Willis, Ms. Bulfin has suffered injuries and damages, including but limited to deprivation of Daisy, pain of the mind and body, depression, anxiety, loss of enjoyment of life, loss of faith in her society, and consternation.

187.    The acts of Defendant Willis, as described herein, were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of, and/or callously indifferent to, the rights of Ms. Bulfin, thus entitling her

to an award of punitive damages to punish Defendant Willis and to deter Defendant Willis and others from engaging in like conduct in the future.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, for the tort of conversion, against Defendant Maryanne Willis, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, punitive damages, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate.

### Count XIV – Intentional Infliction of Emotional Distress
### Against Defendant Maryanne Willis

188.    Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

189.    Defendant Willis' unlawful conduct in the killing of Daisy was intentional and/or reckless.

190.    Defendants Willis' unlawful conduct in the killing of Daisy was extreme and outrageous.

191.    Defendant Willis' unlawful conduct was the cause of extreme emotional distress suffered by Ms. Bulfin.

192.    The acts of Defendant Willis, as described herein, were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of, and/or callously indifferent to, the rights of Ms. Bulfin, thus entitling her to an award of punitive damages to punish Defendant Willis and to deter Defendant Willis and others from engaging in like conduct in the future.

36

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, for the tort of intentional infliction of emotional distress, against Defendant Maryanne Willis, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, punitive damages, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate.

### Count XV – Negligent Infliction of Emotion Distress
### Against Defendant Maryanne Willis

193.    Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

194.    Defendant Willis realized and/or should have realized that her unlawful actions, in the killing of Daisy, created an unreasonable risk of causing Ms. Bulfin to suffer emotional distress.

195.    Defendant Willis' unlawful conduct, in the killing of Daisy, caused Ms. Bulfin to suffer emotional distress and injury that is medically diagnosable and/or of sufficient severity to be medically significant.

196.    Defendant Willis' unlawful conduct was the cause of severe emotional distress suffered by Ms. Bulfin.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, for the tort of negligent infliction of emotional distress, against Defendant Maryanne Willis, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate.

***Count XVI – Unlawful Seizure in violation of the Fourth and Fourteenth
Amendments, cognizable pursuant to 42 U.S.C. §§ 1983 and 1988***

***Against Defendant Vanessa Duris***

197.    Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by
reference and as if set forth fully herein.

198.    As secured and guaranteed by the Fourth Amendment to the Constitution of
the United States of America, "[t]he right of the people to be secure in their persons,
houses, papers, and effects, against unreasonable searches and seizures, shall not be
violated . . ."

199.    As repeatedly recognized by the federal courts, the seizure of a family pet
and dog by killing him/her can give to a claim for an unlawful seizure in violation of the
Fourth Amendment. See Zorich v. St. Louis County, *Doc. # 114*, *Order,* p. 33 (E.D. Mo.
Dec. 18, 2018)("The Eighth Circuit has held that '[a] dog is considered property for
Fourth Amendment purposes.")(citing Andrews v. City of West Branch, Iowa, 454 F.3d
914, 918 (8th Cir. 2006); San Jose Charter of the Hell's Angels v. City of San Jose,
California, 402 F.3d 962, 975 (9th Cir. 2005) ("We have recognized that dogs are more
than just a personal effect. The emotional attachment to a family's dog is not comparable
to a possessory interest in furniture.")(holding that "the killing of a person's dog
constitutes an unconstitutional destruction of property absent a sufficiently compelling
public interest")(internal citations omitted).

200.    As described herein, Defendant Duris, while acting under color of state law
and acting alone and in concert with others, deprived Ms. Bulfin of her rights privileges

and immunities as secured by the Fourth Amendment to the Constitution of the United States of America, by and including but not limited to unlawfully "seizing" Daisy, through the act of killing her.

201.    As a direct and proximate result of the conduct of Defendant Duris, Ms. Bulfin has suffered and continues to suffer injuries and damages, including but limited to: infringements and deprivations of her constitutional rights; great fear for her liberty and security; pain of the mind as well as the body; fear and apprehension; depression, anxiety, and loss of enjoyment of life; loss of faith in her society; and consternation.

202.    The acts of Defendant Duris, as described herein, were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Ms. Bulfin, thus entitling her to an award of punitive damages against Defendant Duris.

203.    As a result of Defendant Duris' unlawful actions and infringements of her protected rights, Ms. Bulfin has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, under 42 U.S.C. §§ 1983 and 1988, against Defendant Vanessa Duris, in her individual capacity, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

### *XVII – Failure to Intervene, cognizable pursuant to 42 U.S.C. §§ 1983 and 1988*
### *Against Defendant Vanessa Duris*

204.    Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

205.    As described herein, Defendants Rainwater, Hawkins, Willis, and Wagenknecht violated Ms. Bulfin's protected Fourth and Fourteenth Amendment rights through the unreasonable manner in which they killed Daisy, Ms. Bulfin's beloved companion animal, without any compelling state interest to justify or excuse that killing.

206.    As the Director of Defendant St. Louis County Animal Care and Control and a degree-holding veterinarian, Defendant Duris had an obligation to intervene, in order to protect both Daisy and Ms. Bulfin's constitutional rights.

207.    Defendant Duris had numerous reasonable opportunities and absolute authority to intervene to prevent the actions described herein, including by asserting her authority as Director to prevent the killing of Daisy and/or enforcing existing state law, local ordinances, and/or St. Louis County policies.

208.    Despite having both a duty and opportunity to intervene to prevent the unlawful and unreasonable acts of Defendants Rainwater, Hawkins, Willis, and Wagenknecht, Defendant Duris failed to intervene to prevent other state actors, under her direct authority, from engaging in violations of Ms. Bulfin's protected rights.

209.    The acts of Defendant Duris were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of, and/or

callously indifferent to, the rights of Ms. Bulfin, thus entitling her to an award of punitive damages against Defendant Duris.

210.    As a result of Defendant Duris' unlawful actions and infringements of her protected rights, Ms. Bulfin has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

### Count XVIII – Malicious Trespass to Personalty, MO. REV. STAT. § 537.330 Against Defendant Vanessa Duris

211.    Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

212.    Pursuant to MO. REV. STAT. § 537.330, "If any person shall maliciously or wantonly damage or destroy any personal property, goods, chattels, furniture or livestock, the person so offending shall pay to the party injured double the value of the things so damaged or destroyed; and upon an affidavit that said damage or destruction was wantonly or maliciously done, it shall be a good ground for an attachment to issue, as in other cases by attachment."

213.    Daisy was the "personal property" of Ms. Bulfin.

214.    In killing Daisy, Defendant Duris maliciously or wantonly destroyed and/or participated in the destruction of Ms. Bulfin's "personal property," i.e., Daisy.

215.    The actions of Defendant Duris, as described herein were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the

41

oppression of, and/or callously indifferent to, the rights of Ms. Bulfin, thus entitling her

to an award of punitive damages against Defendant Duris.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter

judgment in her favor, for the tort of malicious trespass against personalty, against

Defendant Vanessa Duris, and award her any and all compensatory damages, pre-

judgment interest, post-judgement interest, punitive damages, expenses, costs, and any

other such relief to which she is entitled and that this Court deems just, appropriate.

### Count XIX – Veterinary Malpractice, pursuant to MO. REV. STAT. § 340.285
### Against Defendant Vanessa Duris

216.    Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by

reference and as if set forth fully herein.

217.    MO. REV. STAT. § 340.285 recognizes a cause of action against

"veterinarians treating animals and any other entity providing veterinary services for

animals, and all employees of any of the foregoing acting in the course and scope of their

employment, for damages for malpractice, negligence, error, or mistake related to the

veterinary care of animals."

218.    MO. REV. STAT. § 340.200(25) broadly defines a "veterinary facility" to

include "*any place* or unit from which the practice of veterinary medicine is conducted . .

.."

219.    Pursuant to MO. REV. STAT. § 340.200(25), Defendant St. Louis County's

Animal Care and Control facility is a "veterinary facility" in that it is "[a] place . . . from

which the practice of veterinary medicine is conducted."

220.    Defendant Duris is a graduate of a program of veterinary medicine, holds a Doctorate of Veterinary Medicine, and is the Director of Animal Care and Control, despite being unlicensed by the State of Missouri.

221.    Pursuant to MO. REV. STAT. § 340.285, Defendant Duris is subject to the veterinary malpractice statute as  "employee[] [of a veterinary facility] acting in the course and scope of their employment, for damages for malpractice, negligence, error, or mistake related to the veterinary care of animals."

222.    In the course of "treating" Daisy, through the act of unnecessarily euthanizing her, Defendant Duris committed an act of "malpractice, negligence, error, or mistake," by breaching her duties to Ms. Bulfin.

223.    As the result of Defendant Duris' actions, Ms. Bulfin has suffered injuries, including but not limited to the loss of Daisy and severe emotional distress.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, for veterinary malpractice, against Defendant Vanessa Duris, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate.

### *Count XX – Conversion, pursuant to Missouri Common Law*
### *Against Defendant Vanessa Duris*

224.    Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

225.    Ms. Bulfin was the lawful owner of Daisy.

226.    Defendant Duris took possession and control of Daisy by intentionally killing her and/or directing that she be killed**.**

227.    As a result, Defendant Duris deprived Ms. Bulfin of her right to possession of Daisy.

228.    As a direct and proximate result of the conduct of Defendant Duris, Ms. Bulfin has suffered injuries and damages, including but limited to deprivation of Daisy, pain of the mind and body, depression, anxiety, loss of enjoyment of life, loss of faith in her society, and consternation.

229.    The acts of Defendant Duris, as described herein, were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of, and/or callously indifferent to, the rights of Ms. Bulfin, thus entitling her to an award of punitive damages to punish Defendant Duris and to deter Defendant Duris and others from engaging in like conduct in the future.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, for the tort of conversion, against Defendant Vanessa Duris, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, punitive damages, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate.

### Count XXI – Intentional Infliction of Emotional Distress
### Against Defendant Vanessa Duris

230.    Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

231.    Defendant Duris' unlawful conduct in the killing of Daisy was intentional and/or reckless.

232.    Defendants Duris' unlawful conduct in the killing of Daisy was extreme and outrageous.

233.    Defendant Duris' unlawful conduct was the cause of extreme emotional distress suffered by Ms. Bulfin.

234.    The acts of Defendant Duris, as described herein, were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of, and/or callously indifferent to, the rights of Ms. Bulfin, thus entitling her to an award of punitive damages to punish Defendant Duris and to deter Defendant Duris and others from engaging in like conduct in the future.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, for the tort of intentional infliction of emotional distress, against Defendant Vanessa Duris, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, punitive damages, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate.

### Count XXII – Negligent Infliction of Emotion Distress
### Against Defendant Vanessa Duris

235.    Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

236.    Defendant Duris realized and/or should have realized that her unlawful

45

actions, in the killing of Daisy, created an unreasonable risk of causing Ms. Bulfin to suffer emotional distress.

237.    Defendant Duris' unlawful conduct, in the killing of Daisy, caused Ms. Bulfin to suffer emotional distress and injury that is medically diagnosable and/or of sufficient severity to be medically significant.

238.    Defendant Duris' unlawful conduct was the cause of severe emotional distress suffered by Ms. Bulfin.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, for the tort of negligent infliction of emotional distress, against Defendant Vanessa Duris, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate.

### Count XXIII – Unlawful Seizure in violation of the Fourth and Fourteenth Amendments, cognizable pursuant to 42 U.S.C. §§ 1983 and 1988

### Against Defendant Philip Wagenknecht

239.    Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

240.    As secured and guaranteed by the Fourth Amendment to the Constitution of the United States of America, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ."

241.    As repeatedly recognized by the federal courts, the seizure of a family pet and dog by killing him/her can give to a claim for an unlawful seizure in violation of the Fourth Amendment. See Zorich v. St. Louis County, *Doc. # 114*, *Order,* p. 33 (E.D. Mo. Dec. 18, 2018)("The Eighth Circuit has held that '[a] dog is considered property for Fourth Amendment purposes.")(citing Andrews v. City of West Branch, Iowa, 454 F.3d 914, 918 (8th Cir. 2006); San Jose Charter of the Hell's Angels v. City of San Jose, California, 402 F.3d 962, 975 (9th Cir. 2005) ("We have recognized that dogs are more than just a personal effect. The emotional attachment to a family's dog is not comparable to a possessory interest in furniture.")(holding that "the killing of a person's dog constitutes an unconstitutional destruction of property absent a sufficiently compelling public interest")(internal citations omitted).

242.    As described herein, Defendant Wagenknecht, while acting under color of state law and acting alone and in concert with others, deprived Ms. Bulfin of her rights privileges and immunities as secured by the Fourth Amendment to the Constitution of the United States of America, by and including but not limited to unlawfully "seizing" Daisy, through the act of killing her.

243.    As a direct and proximate result of the conduct of Defendant Wagenknecht, Ms. Bulfin has suffered and continues to suffer injuries and damages, including but limited to: infringements and deprivations of her constitutional rights; great fear for her liberty and security; pain of the mind as well as the body; fear and apprehension; depression, anxiety, and loss of enjoyment of life; loss of faith in her society; and consternation.

244.   The acts of Defendant Wagenknecht, as described herein, were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Ms. Bulfin, thus entitling her to an award of punitive damages against Defendant Wagenknecht.

245.   As a result of Defendant Wagenknecht's unlawful actions and infringements of her protected rights, Ms. Bulfin has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, under 42 U.S.C. §§ 1983 and 1988, against Defendant Philip Wagenknecht, in his individual capacity, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

### Count XXIV – Malicious Trespass to Personalty, MO. REV. STAT. § 537.330
### Against Defendant Philip Wagenknecht

246.   Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

247.   Pursuant to MO. REV. STAT. § 537.330, "If any person shall maliciously or wantonly damage or destroy any personal property, goods, chattels, furniture or livestock, the person so offending shall pay to the party injured double the value of the things so

damaged or destroyed; and upon an affidavit that said damage or destruction was wantonly or maliciously done, it shall be a good ground for an attachment to issue, as in other cases by attachment."

248.    Daisy was the "personal property" of Ms. Bulfin.

249.    In killing Daisy, Defendant Wagenknecht maliciously or wantonly destroyed and/or participated in the destruction of Ms. Bulfin's "personal property," i.e., Daisy.

250.    The actions of Defendant Wagenknecht, as described herein were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of, and/or callously indifferent to, the rights of Ms. Bulfin, thus entitling her to an award of punitive damages against Defendant Wagenknecht.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, for the tort of malicious trespass against personalty, against Defendant Philip Wagenknecht, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, punitive damages, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate.

### Count XXV – Conversion, pursuant to Missouri Common Law
### Against Defendant Philip Wagenknecht

251.    Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

252.    Ms. Bulfin was the lawful owner of Daisy.

253.    Defendant Wagenknecht took possession and control of Daisy by intentionally killing her and/or directing that she be killed.

254.    As a result, Defendant Wagenknecht deprived Ms. Bulfin of her right to possession of Daisy.

255.    As a direct and proximate result of the conduct of Defendant Wagenknecht, Ms. Bulfin has suffered injuries and damages, including but limited to deprivation of Daisy, pain of the mind and body, depression, anxiety, loss of enjoyment of life, loss of faith in her society, and consternation.

256.    The acts of Defendant Wagenknecht, as described herein, were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of, and/or callously indifferent to, the rights of Ms. Bulfin, thus entitling her to an award of punitive damages to punish Defendant Wagenknecht and to deter Defendant Wagenknecht and others from engaging in like conduct in the future.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, for the tort of conversion, against Defendant Philip Wagenknecht, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, punitive damages, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate.

*Count XXVI – Veterinary Malpractice, MO. REV. STAT. § 340.285*

*Against Defendant Philip Wagenknecht*

257.    Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

50

258.   MO. REV. STAT. § 340.285 recognizes a cause of action against "veterinarians treating animals and any other entity providing veterinary services for animals, and all employees of any of the foregoing acting in the course and scope of their employment, for damages for malpractice, negligence, error, or mistake related to the veterinary care of animals."

259.   MO. REV. STAT. § 340.200(25) broadly defines a "veterinary facility" to include "*any place* or unit from which the practice of veterinary medicine is conducted . . .."

260.   Pursuant to MO. REV. STAT. § 340.200(25), Defendant St. Louis County's Animal Care and Control facility is a "veterinary facility" in that it is "[a] place . . . from which the practice of veterinary medicine is conducted."

261.   Defendant Wagenknecht holds a license to practice veterinary medicine by the State of Missouri and is engaged in the practice of veterinary medicine at Defendant St. Louis County's Animal Care and Control facility.

262.   In the course of "treating" Daisy, through the act of unnecessarily euthanizing her without authorization from Ms. Bulfin, Defendant Wagenknecht committed an act of "malpractice, negligence, error, or mistake," in breach of his professional duties and responsibilities.

263.   As the result of Defendant Wagenknecht's actions, Ms. Bulfin has suffered injuries, including but not limited to the loss of Daisy and severe emotional distress.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, for veterinary malpractice, against Defendant Philip Wagenknecht,

51

and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate.

### Count XXVII – Intentional Infliction of Emotional Distress
### Against Defendant Philip Wagenknecht

264.    Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

265.    Defendant Wagenknecht's unlawful conduct in the killing of Daisy was intentional and/or reckless.

266.    Defendants Wagenknecht's unlawful conduct in the killing of Daisy was extreme and outrageous.

267.    Defendant Wagenknecht's unlawful conduct was the cause of extreme emotional distress suffered by Ms. Bulfin.

268.    The acts of Defendant Wagenknecht, as described herein, were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of, and/or callously indifferent to, the rights of Ms. Bulfin, thus entitling her to an award of punitive damages to punish Defendant Wagenknecht and to deter Defendant Wagenknecht and others from engaging in like conduct in the future.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, for the tort of intentional infliction of emotional distress, against Defendant Philip Wagenknecht, and award her any and all compensatory damages, pre-

judgment interest, post-judgement interest, punitive damages, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate.

### Count XXVIII – Negligent Infliction of Emotion Distress
### Against Defendant Philip Wagenknecht

269.     Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

270.     Defendant Wagenknecht realized and/or should have realized that his unlawful actions, in the killing of Daisy, created an unreasonable risk of causing Ms. Bulfin to suffer emotional distress.

271.     Defendant Wagenknecht's unlawful conduct, in the killing of Daisy, caused Ms. Bulfin to suffer emotional distress and injury that is medically diagnosable and/or of sufficient severity to be medically significant.

272.     Defendant Wagenknecht's unlawful conduct was the cause of severe emotional distress suffered by Ms. Bulfin.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, for the tort of negligent infliction of emotional distress, against Defendant Philip Wagenknecht, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate.

### Count XXIX – Unlawful Pattern, Practice, and/or Custom
### Against Defendant St. Louis County

273.    Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by reference and as if set forth fully herein.

274.    As described herein, Defendants Rainwater, Hawkins, Willis, Duris, and Wagenknecht, while acting under color of state law and alone and in concert with others, deprived Ms. Bulfin of her rights, privileges, and immunities as secured by the Constitution of the United States of America, including but not limited to unlawfully killing Daisy, her family companion animal.

275.    The misconduct of Defendants Rainwater, Hawkins, Willis, Duris, and Wagenknecht of the St. Louis County ACC, as described herein, was authorized by, and undertaken pursuant to, a practice and custom that what so widespread, well-known, and well-settled, as to constitute a standard operating procedure of Defendant St. Louis County, in that it is and was the regular practice and custom of Defendant St. Louis County and its employees to mislead and deceive individuals into indicating that he/she was requesting euthanasia of his/her pet, through the "owner requested euthanasia" ("ORE") policy.

276.    The serious harms incurred by Ms. Bulfin were the direct consequence of this pattern, practice, and/or custom of Defendant St. Louis County.

277.    As a direct and proximate consequence of the acts of Defendant St. Louis County, Ms. Bulfin has suffered and continues to suffer damages in the form of, *inter alia*, deprivation of her constitutional rights as guaranteed under the Fourth and Fourteenth Amendments, cognizable pursuant to 42 U.S.C. § 1983.

278.    As the result of the actions of the individually-named Defendants and
Defendant St. Louis County, Ms. Bulfin has suffered and continues to suffer damages in
the form of, *inter alia*, deprivation of her constitutional rights and emotional distress.

279.    As a result of Defendant St. Louis County's unlawful actions and
infringements of her protected rights, Ms. Bulfin has been compelled to retain counsel in
this matter and is therefore entitled to a recovery of attorneys' fees and legal costs
pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter
judgment in her favor, under 42 U.S.C. §§ 1983 and 1988, against Defendant St. Louis
County, and award her any and all compensatory damages, pre-judgment interest, post-
judgement interest, attorneys' fees, expenses, costs, and any other such relief to which
she is entitled and that this Court deems just, appropriate, and consistent with the
important purposes of 42 U.S.C. § 1983.

## *Count XXX – Failure to Train, Supervise, and/or Discipline*
### *Against Defendant St. Louis County*

280.    Ms. Bulfin hereby incorporates above-paragraphs 2 through 115, by
reference and as if set forth fully herein.

281.    As described herein, Defendants Rainwater, Hawkins, Willis, Duris, and
Wagenknecht, while acting under color of state law and acting alone and in concert with
others, deprived Ms. Bulfin of her rights, privileges, and immunities as secured by the
Constitution of the United States of America in the unlawful seizure of Daisy, Ms.
Bulfin's companion animal, by killing her; by failing to intervene and stop others from

violating Ms. Bulfin's rights; and/or by directing and/or acquiescing to violations of Ms. Bulfins's rights by subordinates under their supervisory control.

282.    Defendant St. Louis County's training program and disciplinary policies regarding ACC operations, particularly euthanizing family pets pursuant to flawed owner requested euthanasia policies, practices, and customs, was non-existent, inadequate, and/or failed to provide Defendant St. Louis County's employees the necessary knowledge and skills to carry out their duties, and/or allowed them to routinely violate the rights of individuals without fear of repercussion or sanction.

283.    Defendant St. Louis County knew and/or should have known that its ACC employees and staff would routinely be in a position of interacting with persons seeking to temporarily relinquish dogs for required ten (10) day bite quarantines and/or requesting that ACC staff and employees euthanize dogs and cats.

284.    In failing to properly train its officers and employees regarding these encounters, Defendant St. Louis County acted with deliberate indifference to the fact that its failure to provide such training would result in the unlawful killings and deaths of family pets and, thereby, result in deprivations of the constitutional rights of the citizenry, including Ms. Bulfin.

285.    On information and belief, this indifference to training has resulted in ACC's staff and employees mishandling of potential owner requested euthanasia, as well as surrenders and relinquishments of animals in the past.

286.    As a direct and proximate consequence of the acts of Defendant St. Louis County, Ms. Bulfin has suffered and continues to suffer damages in the form of, *inter*

*alia*, deprivation of her constitutional rights as guaranteed under the Fourth and Fourteenth Amendments and as protected by 42 U.S.C. § 1983.

287.    As the result of the actions of the individually-named Defendants and Defendant St. Louis County, Ms. Bulfin has suffered and continues to suffer injury and emotional distress.

288.    As a result of Defendant St. Louis County's unlawful actions and infringements of her protected rights, Ms. Bulfin has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Erin Bulfin respectfully prays that this Court enter judgment in her favor, under 42 U.S.C. §§ 1983 and 1988, against Defendant St. Louis County, and award her any and all compensatory damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

Respectfully submitted, this 26th
day of May, 2020,

*/s/ Daniel J. Kolde*
Daniel J. Kolde # 64965MO
P.O. Box 440344
St. Louis, Missouri 63144-9998
Tel:    636.675.5383
Email: Daniel.kolde.law@gmail.com

*ATTORNEY FOR PLAINTIFF*