UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ERIN BULFIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:20 CV 689 JMB |
| | ) |
| BECKY RAINWATER, et al., | ) |
| | ) |
| Defendants/Third-Party Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| EDWARD NEA, | ) |
| | ) |
| Third-Party Defendant. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Edward Nea's motion to dismiss the third-party complaint, pursuant to Rule 12(b)(6), Fed.R.Civ.P. The issues are fully briefed.[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Plaintiff Erin Bulfin alleges that she made arrangements with St. Louis County's Animal Care and Control (ACC) to quarantine her dog Daisy for ten days after Daisy allegedly bit someone. Her husband Edward Nea took Daisy to ACC and completed paperwork. Instead of quarantining Daisy, however, defendants euthanized her. Plaintiff filed suit against St. Louis County; ACC's director Vanessa Duris; ACC employees Becky Rainwater, Renita Hawkins, and

---

[1] In the interest of simplicity, the Court will refer to the third-party plaintiffs as "defendants" and the third-party defendant as "Nea" or "Mr. Nea."

Maryanne Willis; and contract veterinarian Philip Wagenknecht. Defendants claim that plaintiff's husband Edward Nea approved euthanizing Daisy and bring third-party claims for contribution and fraud against him. In the event that their claims are dismissed, defendants alternatively seek joinder of Mr. Nea pursuant to Rules 19, 20, or 21, Fed.R.Civ.P. Nea moves to dismiss, arguing that contribution is not available for plaintiff's claims and that the defendants' fraud claim is not pleaded with particularity as required by Rule 9, Fed.R.Civ.P.

**I.  Background**

According to allegations in plaintiff's complaint, her dog Daisy allegedly bit someone on December 26, 2019. The next day, plaintiff called ACC to get information regarding mandatory quarantine. She spoke with someone[2] who confirmed that Daisy had to be quarantined for 10 days. Plaintiff was told she could quarantine Daisy at ACC, a veterinarian, or a boarding facility. Plaintiff was not told that she also had the option of quarantining Daisy at home. She sought and received assurances that Daisy would not be euthanized during the 10-day quarantine.

A few hours after plaintiff called the ACC, Nea took Daisy to the ACC shelter to be quarantined. When he arrived, Nea spoke with defendant Hawkins.[3] He expressly stated that Daisy was to be quarantined and that he did not want Daisy euthanized. Ms. Hawkins assured Nea that Daisy would not be euthanized and that he and plaintiff could visit Daisy during the quarantine. Defendant Willis scanned Daisy's microchip, which disclosed that "Erin Nea" was Daisy's registered owner and provided the owner's phone number.[4] No one asked Mr. Nea any questions regarding his relationship to Erin Nea or Daisy. No one contacted Erin Nea at the registered phone number.

---

[2] Plaintiff alleges, on information and belief, that she spoke with defendant Rainwater. Complaint at ¶ 27 [Doc. # 1]. Defendants deny that plaintiff spoke with Rainwater. Answer at ¶ 27 [Doc. # 10].
[3] Defendants admit that Nea spoke with Hawkins. Answer at ¶ 36 [Doc. # 10].
[4] Defendants deny that Willis scanned the microchip. Answer at ¶ 43

2

Defendant Hawkins completed a form entitled "Animal Bite/Injury Reporting Form." She entered January 6, 2020, as the conclusion of the 10-day quarantine period. She also completed a form entitled "St. Louis County Department of Public Health – Animal Care & Control." The form included provisions that inaccurately stated that the animal had not bitten anyone within the last ten days and that the person relinquishing the animal was its owner or custodian. Defendant Hawkins checked a box marked "(ORE) OWNER REQUESTS EUTHANASIA" (the "ORE box"). She did not discuss the significance of this checkmark with Mr. Nea before asking him to sign in three places and he did not read the form before he signed it. Plaintiff alleges, on information and belief, that defendant Rainwater was in an adjacent office where she could see and hear the interaction between Nea and Hawkins. Plaintiff also alleges that defendant Rainwater reviewed the documents Hawkins completed.

Defendant Rainwater told defendants Wagenknecht and Duris that Daisy had been surrendered as a "bite case." Defendant Wagenknecht euthanized Daisy shortly after Nea left her at the ACC facility.

Late on December 27, 2019, plaintiff learned that she had the option of quarantining Daisy at home. The next morning, she went to the ACC shelter to pick her up. When she arrived, defendant Rainwater told plaintiff that Daisy had been euthanized the day before and that a specimen had been sent to the State veterinarian for analysis. No one notified the microchip identification company that Daisy had been euthanized and, as a result, plaintiff received multiple emails telling her that her dog had been found and could be picked up at ACC.

Plaintiff alleges that, in July 2019, defendant St. Louis County released the results of an audit of ACC. The audit was highly critical of ACC's policies and practices regarding owner requested euthanasia, and recommended that St. Louis County immediately stop having owners of

surrendered animals check and initial the ORE box. The audit made other recommendations regarding surrendered animals that plaintiff alleges were not followed in this instance.[5]

On May 26, 2020, plaintiff filed suit, asserting against the individual defendants claims for unlawful seizure pursuant to 42 U.S.C. §§ 1983 and 1988,[6] malicious trespass to personalty pursuant to Mo.Rev.Stat. § 537.330,[7] conversion,[8] intentional infliction of emotional distress,[9] and negligent infliction of emotional distress.[10] She additionally asserts claims for veterinary malpractice pursuant to Mo.Rev.Stat. §340.285 against defendants Duris and Wagenknecht[11] and a claim for failure to intervene pursuant to §§ 1983 and 1988 against director Duris.[12] Finally, she asserts § 1983 claims against St. Louis County for unlawful pattern, practice or custom; and failure to train, supervise, or discipline.[13]

On March 23, 2021, defendants filed a third-party complaint against Edward Nea, seeking contribution under a theory of common-law negligence (Count I) and bringing a separate claim for fraud (Count II). They allege the existence of Ms. Bulfin's lawsuit against them, that Nea held himself out as Daisy's owner when he surrendered her, and that he demanded that she be euthanized. Nea moves to dismiss the third-party complaint.

## II. Legal Standards

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must

---

[5] Plaintiff attached an excerpt of the audit to her complaint. [Doc. # 1-1].
[6] Counts I, VI, XI, XVI, and XXIII.
[7] Counts II, VII, XII, XVIII, and XXIV.
[8] Counts III, VIII, XIII, XX, and XXV.
[9] Counts IV, IX, XIV, XXI, and XXVII.
[10] Counts V, X, XV, XXII, and XXVIII.
[11] Counts XIX and XXVI.
[12] Count XVII.
[13] Counts XXIX and XXX.

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim for relief "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (quoting Twombly, 550 U.S. at 555 & n.3).  This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief.  Id. at 555-56; Fed. R. Civ. P. 8(a)(2).  The principle that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions.  Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Under Rule 9(b), Fed.R.Civ.P., "a party must state with particularity the circumstances constituting fraud."  Rule 9(b)'s "particularity requirement demands a higher degree of notice than that required for other claims," and "is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations."  U.S. ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006) (citation omitted).  To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result.  Id.  Under Rule 9(b), a

plaintiff must plead "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." In other words, the party must typically identify the "who, what, where, when, and how" of the alleged fraud. Id. The level of particularity required depends on, *inter alia,* the nature of the case and the relationship between the parties. BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007) (citation omitted). Id. "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Id. (citation omitted).

**III.     Discussion**

Third-party defendant Nea argues that: (1) as a matter of law, there is no right to third-party contribution for § 1983 claims; (2) Missouri's intentional misconduct rule bars contribution arising from intentional torts; (3) defendants failed to plead sufficient factual allegations to support a claim for contribution for negligence or negligent misrepresentation; and (4) defendants failed to plead fraud with particularity as required by Rule 9(b), Fed.R.Civ.P.

**A.     Right of Contribution for § 1983 Claims**

Under 42 U.S.C. § 1983, a plaintiff can hold a defendant liable for a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. While the statute provides for the liability of a constitutional tortfeasor, it is silent on whether that tortfeasor can seek contribution or indemnification from others. Dudley v. City of Kinston, No. 4:18-CV-00072-D, 2020 WL 6889200, at *3 (E.D.N.C. Nov. 23, 2020). Third-party plaintiffs argue that 42 U.S.C. § 1988 allows the Court to borrow Missouri's statute granting a right of contribution among tort-feasors, § 537.060, Mo.Rev.Stat.

Section 1988(a) provides that, if federal law does not "furnish suitable remedies" for a deprivation of constitutional rights, courts may fashion a remedy using state common law, so long

6

as that law "is not inconsistent with the Constitution and laws of the United States." The purpose of § 1988 is "to complement the various acts which do create federal causes of action for the violation of federal civil rights." Hoa v. Riley, 78 F. Supp. 3d 1138, 1147 (N.D. Cal. 2015) (quoting Moor v. Alameda Cnty., 411 U.S. 693, 702 (1973)). Section 1988 "recognizes that in certain areas federal law is unsuited or insufficient to furnish suitable remedies; federal law simply does not 'cover every issue that may arise in the context of a federal civil rights action.'" Id. (quoting Robertson v. Wegmann, 436 U.S. 584, 588 (1978)) (internal quotations omitted). "[T]he ultimate rule adopted under § 1988 is a federal rule responsive to the need whenever a federal right is impaired." Robertson, 436 U.S. at 588 (citation omitted). Determining whether a state law applies through § 1988 requires consideration of the policies served by § 1983. Id. at 590. Those policies include "compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law."[14] Id. at 590–91.

A majority of courts have concluded that § 1988 does not permit borrowing state laws on contribution, because doing so would conflict with the policies underlying § 1983, including deterrence of conduct that violates constitutionally-protected rights. See Dudley, 2020 WL 6889200, at *4 ("The purpose served by bringing a claim of contribution has nothing to do with protecting or vindicating civil rights."); Hoa, 78 F. Supp. 3d at 1147 (["A] right of contribution [under § 1988] would not serve Section 1983's policies of compensation and deterrence."); Roell v. Hamilton Cty., No. 1:14-CV-637, 2015 WL 3605345, at *5 (S.D. Ohio June 8, 2015) ("[A]ny state law that would permit a right of contribution against a third-party under § 1983 would be inconsistent with the text and intent of § 1983."); Greene v. City of New York, No. 08 CV 243 RJD CLP, 2010 WL 1936224, at *4 (E.D.N.Y. May 12, 2010) ("[P]ermitting the City to invoke a

---

[14] Robertson addressed whether, under § 1988, state survivorship statutes could be borrowed for § 1983 claims.

state law right to contribution on Greene's federal claims asserted under Sections 1983, 1985 and 1986 would be inconsistent with Congress's purpose of deterring the deprivation of constitutional rights in enacting those statutes."); Hurley v. Horizon Project, Inc., No. CV-08-1365-ST, 2009 WL 5511205, at *5 (D. Or. Dec. 3, 2009), report and recommendation adopted as modified, No. CV 08-1365-ST, 2010 WL 273806 (D. Or. Jan. 15, 2010) ("[I]ncorporating Oregon's contribution framework would conflict with the policies underlying § 1983[,] includ[ing] compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law.") (internal quotation omitted); Burris v. Cullinan, No. 09-3116, 2009 WL 3575420, at *9 (C.D. Ill. Oct. 23, 2009) ("[T]he deterrent effects of § 1983 would be reduced by allowing state actors to seek contribution, and would thus frustrate one of the purposes behind the provision."); Hepburn ex rel. Hepburn v. Athelas Inst., Inc., 324 F. Supp. 2d 752, 759 (D. Md. 2004) ("Section 1983's twin goals of compensation and deterrence are not furthered by reducing the defendants' costs of violations while placing the risk of an insolvent defendant on the plaintiff."); Mason v. City of New York, 949 F. Supp. 1068, 1079 (S.D.N.Y. 1996) (finding that allowing contribution in § 1983 cases would conflict with statute's goal of deterrence and thus is impermissible under § 1988); see also TCI Cablevision, Inc. v. City of Jefferson, Mo., 604 F. Supp. 845, 847 (W.D. Mo. 1984) (stating that there is no right of contribution under § 1983).

Defendants rely on a decision in Kohn v. Sch. Dist. of City of Harrisburg, No. 1:11-CV-109, 2012 WL 3560822, at *6 (M.D. Pa. Aug. 16, 2012), in which the district court rejected the argument that allowing civil-rights violators to seek contribution conflicted with § 1983's goal of deterring violations of civil rights. "We think deterrence is served as long as the violators are aware that they may be liable in damages, even if they may lessen the impact by obtaining

8

contribution from another party."[15] This Court respectfully disagrees and finds that the majority view is the better reasoned one.

Defendants also suggest that a right to contribution under § 1983 arises from federal common law. Opposition Memorandum at 6 [Doc. # 38]. In 1981, the Supreme Court concluded that it was improper to add a federal common-law right to contribution to the Equal Pay Act and Title VII, Northwest Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO, 451 U.S. 77 (1981), and federal antirust statutes, Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630 (1981). Following Northwest and Texas Industries, district courts have declined to find a common-law right to contribution under § 1983. See, e.g., Carlos v. Chavez, No. 5-16-CV-00251-FB-RBF, 2018 WL 3046943, at *3 (W.D. Tex. June 20, 2018) (denying motion for leave to amend to answer to assert cross-claim for contribution); Smart v. Allegheny Cty., No. 2:15CV953, 2018 WL 10230904, at *2 (W.D. Pa. May 31, 2018) (denying motion for leave to supplement defenses to seek contribution); Stelly v. Guidroz, No. 6:15-CV-00188, 2018 WL 1702849, at *4 (W.D. La. Mar. 15, 2018), report and recommendation adopted, No. 6:15-CV-00188, 2018 WL 1702490 (W.D. La. Apr. 6, 2018) (no right to contribution through federal common law); Guglielmo v. Montgomery Cty., Ohio, No. 3:17-CV-6, 2017 WL 5991849, at *5 (S.D. Ohio Dec. 4, 2017), report and recommendation adopted, No. 3:17-CV-6, 2017 WL 6508590 (S.D. Ohio Dec. 20, 2017) (no implied right to contribution under § 1983); Bachelor v. Evans, No. 6:16-CV-68-ORL-

---

[15] The Kohn court also stated that "[a]llowing contribution also serves deterrence in a direct way," because, "[w]ithout a right of contribution a wrongdoer may escape liability for his actions because of the happenstance of the plaintiff's choice of defendants." Id. (quoting Glus v. G. C. Murphy Co., 629 F.2d 248, 252 (3d Cir. 1980), cert. granted, judgment vacated sub nom. Retail, Wholesale & Dep't Store Union, AFL-CIO v. G.C Murphy Co., 451 U.S. 935, 101 S. Ct. 2013, 68 L. Ed. 2d 321 (1981)). The Glus court held that there was a federal common law right to contribution for Title VII claims, a holding that was overruled by the Supreme Court in Northwest Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO, 451 U.S. 77 (1981). Finally, the Kohn court reasoned that allowing contribution serves the § 1983's goal of compensating the victim because it allows a defendant to bring into the case a party who can provide additional compensation.

28KRS, 2016 WL 6609188, at *4 (M.D. Fla. Nov. 7, 2016); Kohn, 2012 WL 3560822, at *4 (agreeing with cases finding no federal common-law right to contribution in § 1983); Katka v. Mills, 422 F. Supp. 2d 1304, 1309 (N.D. Ga. 2006) ("Northwest Airlines and Texas Industries are strong indications from the Supreme Court that only under the most narrow and specific of circumstances could a federal common law right to contribution be found."). Third-party plaintiffs assert in general terms that the reasoning in Northwest and Texas Industries should not be extended to § 1983 claims. They cite no case law to support that assertion and the Court finds this argument to be meritless.

The Court holds that there is not a right to contribution for § 1983 claims and third-party plaintiffs' claim for contribution will be dismissed with respect to plaintiff's § 1983 claims.[16]

### B. Intentional Conduct Rule

Third-party defendant Nea argues, and third-party plaintiffs concede, that they have no right to contribution on plaintiff's intentional torts. See Nestle Purina Petcare Co. v. The Blue Buffalo Co. Ltd., No. 4:14 CV 859 RWS, 2016 WL 5390945, at *2 (E.D. Mo. Sept. 27, 2016) ("Missouri courts prohibit claims for contribution or indemnity among willful joint tortfeasors.") (citing Missouri Pac. R. Co. v. Whitehead & Kales Co., 566 S.W.2d 466, 469 (Mo. 1978)). Thus, the motion to dismiss will be granted with respect to plaintiff's claims for malicious trespass to personalty,[17] conversion,[18] and intentional infliction of emotional distress.[19]

### C. Claim for Contribution Arising from Nea's Alleged Negligence

Defendants allege that Nea had a duty to provide accurate information when he surrendered Daisy, that he breached that duty, and that his breach caused plaintiff Bulfin's injuries. Thus,

---

[16] Counts I, VI, XI, XVI, XVII, XXIII, XXIX, and XXX.
[17] Counts II, VII, XII, XVIII, and XXIV.
[18] Counts III, VIII, XIII, XX, and XXV.
[19] Counts IV, IX, XIV, XXI, and XXVII.

10

defendants claim they are entitled to a determination of their relative degree of fault, if any, as compared to that of Nea. They seek to hold him liable in contribution for any damages for which they may be held liable to plaintiff. Nea argues that the claim is more properly characterized as one for negligent misrepresentation, rather than general negligence, but that in either event defendants cannot establish that he owed them a duty, a required element of their claim.

The parties address whether Nea negligently breached a duty he owed to defendants. But this claim arises in the context of a contribution claim. "To maintain an action for contribution, both the party seeking contribution and the defendant against whom contribution is sought must be . . . tortfeasor[s], originally liable to the plaintiff-injured party." Miles *ex rel.* Miles v. Rich, 347 S.W.3d 477, 482 (Mo. Ct. App. 2011) (quoting Gramex Corp. v. Green Supply, Inc., 89 S.W.3d 432, 442 (Mo. banc 2002) (internal quotation omitted), ellipsis in original). "[L]iability for contribution depends upon the existence of *actionable* negligence of the defendant toward the plaintiff." Id. (quoting Sweet v. Herman Bros., Inc., 688 S.W.2d 31, 32 (Mo. Ct. App. 1985) (emphasis in original)). "In the absence of *actionable* negligence toward the plaintiff, an alleged tortfeasor is not liable to other defendants for contribution."[20] Id. Therefore, in order for defendants to state a claim for contribution they must allege actionable negligence by Mr. Nea toward Ms. Bulfin. Defendants do not allege that Nea owed plaintiff a duty and thus fail to state a contribution claim.

---

[20] In Miles, the victim of a dog bite brought a personal injury action against the dog owner. The dog owner then filed a third-party petition against the Humane Society from which she had adopted the dog. The court held that the dog owner could not maintain a contribution claim against the Humane Society because the Humane Society did not owe the victim a duty. Id. at 482.

### D. Fraud Claim

In Count II, defendants assert a claim for fraud, alleging that Nea knowingly made false representations that he owned Daisy, that he acted with the intention that defendants euthanize her, and that defendants reasonably relied on these material, false representations.

To state a claim for fraudulent misrepresentation under Missouri law, a plaintiff must allege facts to support the following elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. Hill v. Bank of Am., N.A., No. 4:16CV00444-ERW, 2016 WL 6441599, at *3 (E.D. Mo. Nov. 1, 2016) (quoting Renaissance Leasing, LLC v. Vermeer Mfg. Co., 322 S.W.3d 112, 131–32 (Mo. 2010)). "A failure to establish any one of the essential elements of fraud is fatal to recovery." Id. (quoting Verni v. Cleveland Chiropractic Coll., 212 S.W.3d 150, 154 (Mo. 2007)); see also Bohac v. Walsh, 223 S.W.3d 858, 863 (Mo. Ct. App. 2007) ("The pleader must state the circumstances of each element of fraud with particularity.").

Defendants allege that Nea made false representations of ownership[21] upon which they reasonably relied, but fail to allege to whom Nea made these false representations. Nea argues that defendants cannot recover on the fraud claim as a group and that the individual defendants must each allege the elements of the claim with particularity. Thus, the third-party complaint must

---

[21] In their opposition to dismissal, defendants assert that Nea "filled out" the ORE form. Opposition at 8 ("3d-Party Pls. clearly indicate that 3d-Party Def. filled out the Owner Requested Euthanasia form."). This overstates the allegation in the third-party complaint, which alleges only that Nea "executed the . . . form, indicating and signing multiple times that he desired the canine be euthanized." Third-Party Complaint at ¶ 20 [Doc. # 31].

allege which individual defendants heard Nea make the alleged false statements. Furthermore, he contends, the third-party complaint must allege sufficient facts with particularity regarding the remaining elements: the hearers' ignorance of the falsity of the representation; reliance on the representation; the right to rely thereon; and consequent and proximately caused injury.

The Court agrees that, as presently pleaded, the defendants' fraud claim does not satisfy Rule 9's particularity requirement. See Marrero v. Fraternal Ord. of Police Chicago Lodge No. 7, No. 12-CV-5280, 2013 WL 3224450, at *3 (N.D. Ill. June 25, 2013) (dismissing counterclaim for fraud where defendants failed to identify specific individuals who heard or witnessed alleged fraudulent misrepresentations). The Court will grant the motion to dismiss without prejudice to the individual defendants repleading their factual allegations with the necessary particularity.

### E. Joinder

Defendants state that Nea should be joined as a party based on his apparent ownership interest in Daisy. The Court will take up this issue if raised in a properly supported motion for joinder.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of third-party defendant Edward Nea to dismiss the third-party complaint, pursuant to Rule 12(b)(6) and Rule 9 [Doc. # 33] is **granted**, without prejudice to refiling a properly-pleaded fraud claim.

**IT IS FURTHER ORDERED** that defendants shall have until **July 23, 2021**, to file an amended third-party complaint restating their claim for fraud.

                                                  */s/ John M. Bodenhausen*
                                                  JOHN M. BODENHAUSEN
                                                  UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of July, 2021.