UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ERIN BULFIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 4:20 CV 689 JMB |
| | ) |
| BECKY RAINWATER, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

On November 21, 2022, judgment was entered in favor of Defendants on Plaintiff's claims pursuant to 42 U.S.C. § 1983 that Defendants violated her constitutional rights when they participated in the euthanization of her dog. Familiarity with the Memorandum and Order entered on the same day (Doc. 218) is assumed and the underlying facts of this case will not be repeated in detail except where necessary. In sum, this Court found that Plaintiff's Fourth Amendment unreasonable seizure claims fail as a matter of law and that Defendants are entitled to qualified immunity on those claims. In particular, no reasonable jury would find that an unreasonable seizure occurred because the evidence established that there was consent for the seizure, Plaintiff did not establish the individual liability of each Defendant, and Defendants are, in any event, entitled to qualified immunity because her rights were not clearly established at the time of the incident. In addition, Plaintiff cannot prevail on her Monell claims as a matter of law, in part, because she failed to show any other similar constitutional violations. Finally, this Court declined to exercise supplemental jurisdiction over Plaintiff's state law claims.

Now pending before the Court are Defendant Philip Wagenknecht's Motions for Costs, Attorney Fees, and to Alter Judgment (Docs. 220, 221, and 225), and Plaintiff Erin Bulfin's Motion

for Relief and/or to Correct and Amend the Record (Doc. 223). The Motions are fully briefed. For the reasons set forth below, Defendant's Motion for Costs (Doc. 220) is **GRANTED**, Defendant's Motion for Attorney Fees (Doc. 221) is **DENIED**, Defendant's Motion to Alter Judgment (Doc. 225) is **DENIED**, and Plaintiff's Motion for Relief (Doc. 223) is **DENIED**.

I. **Plaintiff's Motion for Relief and/or Correct and Amend the Record (Doc. 223)**

Plaintiff brings her motion pursuant to Federal Rules of Civil Procedure 59(e) and 60(b)(6). Motions to reconsider are limited to correcting "manifest errors of law or fact or to present newly discovered evidence." Arnold v. ADT Sec. Servs., Inc., 627 F.3d 716, 721 (8th Cir. 2010) (quotation marks and citations omitted). They cannot be used to present new arguments or evidence that could have been raised in the previous motion or to reargue previous positions. Arnold, 627 F.3d at 721; Broadway v. Norris, 193 F.3d 987, 989-990 (8th Cir. 1999). Plaintiff is entitled to such extraordinary relief only upon a showing of exceptional circumstances. Perez v. Does1-10, 931 F.3d 641, 647 (8th Cir. 2019).

Plaintiff argues that: (1) the court erred in considering the HomeAgain records; (2) the court erred in finding that Edward Nea consented to Daisy's euthanasia; and (3) the court should consequently reconsider the decision on her Monell claims. As to the first claim, the HomeAgain records were only tangentially related to the issues in this case and discussion of the same was not necessary for disposition of Plaintiff's claims. Second, Plaintiff's arguments regarding the nature of Edward Nea's consent, the legal ramifications of that consent, and Defendants' individual liability were raised, or should have been raised, in her summary judgment filings and Plaintiff has presented no exceptional circumstances to reconsider those rulings. And, finally, Plaintiff's argument as to Monell liability is undeveloped and unsupported.

> A. <u>HomeAgain records</u>
>
> The November 21, 2022 Order stated:
>
>> Plaintiff states: 'HomeAgain verified that Daisy's microchip was registered to Plaintiff Bulfin (misidentified in HomeAgain's records as 'Erin Nea'). [Ex. 4, 10, 20; Ex. 21, Depo of M. Willis, 169:9-12].' This statement is misleading at best and patently false at worst. Exhibit 4 is the Intake Form in which it is notated that the 'chip traced – Erin Nea' at the same address as Edward Nea (Doc. 129-4). Exhibit 10 is a printout from HomeAgain. This document contains a curious set of information. As of February 22, 2022, the 'Microchip is currently enrolled' to Erin Bulfin (at the same address as Edward Nea) (Doc. 129-9, p. 1). On page 2 of the document, there is a notation at the bottom that: 'Update Received through Standard Interface on 23-Mar-20. Changed Owner's Last name to BULFIN Ownership Transfers: None.' (Doc. 129-9, p. 2). On page 4 of the document, the first 'contact center history' of the microchip indicates that on March 15, 2014 the microchip was 'enrolled at that point to: Erin Nea . . .' (with the same relevant address) with further references to 'Erin Nea' thereafter (Doc. 129-9, p. 4). The record reflects that Plaintiff updated the ownership information for the microchip after Daisy died – there was no 'misidentification' in the record. In her deposition, Willis indicated that when she ran the microchip she received a "match" as to the last name on the Intake Form (Doc. 181-6, p. 3-4).
>
> (Doc. 218, p. 11). As to the record, the undersigned found that: "When Willis checked Daisy's microchip, she saw that 'Erin Nea' was listed with the same address as Edward Nea" with a footnote that stated:
>
>> Plaintiff's repeated and persistent claim that the scan of the microchip revealed a 'mismatch' is without merit. Any reasonable person would see the same last name on the microchip and Nea's driving license and assume that they were a married couple residing together with their dog. It further appears that Plaintiff did not change her last name with HomeAgain (to Bulfin) until after Daisy was euthanized and only a few months prior to filing her lawsuit. Thus, it is reasonable to conclude that Plaintiff changed her last name with HomeAgain simply to bolster and support her Fourth Amendment Claims.
>
> (Doc. 218, p. 16 n.21). The Court concluded by finding that:
>
>> Again, viewing the facts in the light most favorable to Plaintiff, Defendants' efforts to verify Daisy's ownership were constitutionally sound. Plaintiff told Rainwater that her husband – Nea – was bringing Daisy to ACC and why. Nea did, in fact, bring in Daisy. Daisy's chip was checked and Daisy was registered to Erin Nea at the same address provided by her husband. Plaintiff does not allege that she told Rainwater or anyone else that her family had a unique dog ownership in which she

>alone owned Daisy and made all decisions regarding Daisy. Finally, and tellingly, someone changed the ownership information for Daisy after she was euthanized.

(Doc. 218, p. 23).

Plaintiff argues that the Court misinterpreted this record as deliberate action on Plaintiff's part to mislead the Court. That, in fact, Plaintiff had no hand in "changing" the HomeAgain records and had no intention of misleading or engaging in improper conduct. Plaintiff is correct that the undersigned considered the information contained in the record, which was presented as an indication of Daisy's ownership. Plaintiff did, in fact, argue the HomeAgain records supported her claim that some of Defendants should have known that her husband did not have authority to agree to an owner requested euthanasia based on the name in the records. At the time of the events in question, Plaintiff's last name in the HomeAgain records was Nea – the same last name that her husband presented with when Daisy of euthanized. Whether Plaintiff intended to mislead the Court is not the point; the name in the HomeAgain records at a later date is simply irrelevant.[1]

While the contents of the records are not dispositive of Plaintiff's claims, her previous and persistent argument that there was some misidentification at play based on the record was misleading, regardless of her intent (Plaintiff now asserts that she meant to argue that the first names on the records were different). As set forth in the previous Order, the records, and other undisputed facts of this case, demonstrate that it was reasonable for Defendants to assume that Edward Nea had an ownership interest in Daisy and apparent, if not actual, authority to determine Daisy's fate. Accordingly, Plaintiff's Fourth Amendment claim fails as a matter of law. And even if there was some error, it was not clearly established at the time of the events that Defendants' actions violated Plaintiff's Fourth Amendment rights meaning they are entitled to qualified

---

[1] The Court has not considered the new evidence attached to Plaintiff's memorandum in support because the information is irrelevant to a determination of the issues in this case. See Briscoe v. Cnty of St. Louis, MO, 690 F.3d 1004, 1015-1016 (8th Cir. 2012).

Page 4 of 10

immunity. Finally, to the extent that Plaintiff argues that the Fourth Amendment requires *all* owners of property to consent to a seizure, she has presented no new or compelling case authority to support this argument. Plaintiff already cited to Dixon v. Lowery, 302 F.3d 857 (8th Cir. 2002) and she has not explained how this Court erred in finding that the case does not apply to the circumstances of this case.

      B.      Edward Nea's consent

Plaintiff argues that the Court erred in considering the seizure claim under the same rubric as a search claim. She asserts that the prohibition against unlawful searches implicates privacy interests whereas the prohibition against unreasonable seizures implicates possessory interests and that Dixon and Soldal v. v. Cook County, Ill., 506 U.S. 56 (1992), are controlling authority. As stated above, Dixon does not apply in the manner advocated by Plaintiff. In Soldal, the Court held that "being unceremoniously dispossessed of one's home" cannot "be viewed as anything but a seizure invoking the protection of the Fourth Amendment." Id. at 61. In so holding, the Court rejected the contention that the Fourth Amendment only protects privacy interests and not the "meaningful interference with an individual's possessory interests." Id. at 62-63 (citation omitted). In this case, the Court assumed that a Fourth Amendment seizure occurred consistent with Soldal. However, that was not the end of the inquiry; the ultimate question was whether the seizure was unreasonable under the circumstances, a question that was not considered in Soldal. In this case, as previously found, the seizure was not unreasonable because Defendants reasonably relied on consent. Finally, to the extent that Plaintiff now parses out each Defendants' actions in an attempt to show individual liability pursuant to 42 U.S.C. § 1983, such arguments could have and should have been raised in prior filings. A Rule 59 or 60 motion is not a vehicle to raise grounds that were previously raised and rejected by the Court or to raise arguments that could have been made

but were not.  Accordingly, Plaintiff has presented no manifest error of law or fact or extraordinary circumstances that would warrant relief.[2]

### C. Monell claims

Plaintiff briefly argues that if the Court were to reconsider individual liability that the Court should also reconsider St. Louis County's liability because "Plaintiff has presented sufficient evidence of St. Louis County's pattern and Practices regarding, *inter alia*, the 'ORE' box" (Doc. 224, p. 15).  Plaintiff's argument is undeveloped and unsupported and need not be addressed further.

### II. Defendant Wagenknecht's Motion to Amend Judgment (Doc. 225)

In this Motion, Defendant Wagenknecht argues that his third-party contribution claim should be dismissed without prejudice to him asserting the claim in state court should Plaintiff choose to refile her state law claims in state court.

On March 23, 2021, Wagenknecht filed a third-party complaint alleging contribution (Count I) and fraud (Count II) against Edward Nea (Doc. 31).  In an Order dated July 12, 2021, the undersigned found that Wagenknecht failed to state a contribution claim and that his fraud claim was not pled with particularity, as required by Federal Rule of Civil Procedure 9 (Doc. 41).  In a subsequent Order of Dismissal (Doc. 42), the contribution claim was dismissed with prejudice and the fraud claim was dismissed without prejudice.  Wagenknecht then filed an amended third-party complaint (Doc. 60); however, that complaint was stricken as improper third-party practice (Doc. 67).  Accordingly, Wagenknecht's third-party complaint was dismissed with prejudice as to

---

[2] As to Plaintiff's argument that the Court erroneously found that Defendants are entitled to qualified immunity, Plaintiff again bases her argument on a generalized statement of the law instead of presenting case authority that provides the well-defined contours of the rights she advocates.  See City of Tahlequah, Oklahoma v. Bond, __ U.S. __ 142 S.Ct. 9 (2021).

Count I and without prejudice as to Count II. The judgment entered on November 21, 2022 reflected this disposition.

In his motion, Wagenknecht states that "[s]ince the court did not exercise supplement jurisdiction over Plaintiff's state court claims, it would be appropriate to also decline jurisdiction over Defendant's contribution claim relating to those state court claims and to dismiss that contribution claim without prejudice." Wagenknecht has cited to no case authority that would permit such an action. This Court exercised jurisdiction over Wagenknecht's claim and dismissed it with prejudice, which operates as an adjudication on the merits. See Fed.R.Civ.P. 41(b). Wagenknecht has presented no case authority or any extraordinary circumstances that would warrant reversal of the previous order. The judgment accurately reflects this conclusion and was not entered in error such that Rule 59(e) relief is warranted.

### III.    Defendant Wagenknecht's Bill of Costs (Doc. 221)

Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." This Court has discretion in awarding costs to a prevailing party, which is presumptively entitled to recover appropriate taxable costs. Hoekman v. Education Minnesota, 41 F.4th 969, 979 (8th Cir. 2022); Blakley v. Schlumberger Technology Corp., 648 F.3d 921, 930 (8th Cir. 2011). For purposes of Rule 54, "[a] defendant qualifies as a prevailing party . . . when the district court dismisses the plaintiff's federal claims and declines to exercise supplemental jurisdiction over the plaintiff's remaining state law claims." Thompson v. Kanabac County, 958 F.3d 698, 709 (8th Cir. 2020) (quotation marks and citations omitted). Defendant Wagenknecht seeks reimbursement of "fees for printed or electronically recorded transcripts necessarily obtained for use in the case" in the amount of $8,759.84. See 28 U.S.C. § 1920.

Plaintiff has not overcome the presumption in favor of awarding costs. Wagenknecht is a prevailing party, his request for costs is consistent with 28 U.S.C. § 1920, and Plaintiff's arguments to deny or limits costs are without merit. Plaintiff's contention that her federal claims are not the primary claims are without merit; those claims were in fact the primary claims litigated in this Court and indeed the focus of Plaintiff's own motion for summary judgment (Doc. 128). Her assertion that the deposition costs should be reduced to reflect that Wagenknecht "prevailed on one of the six counts against him" is without merit. The depositions were necessary for litigation of the claims in this lawsuit and Wagenknecht is a prevailing party as set forth in Thompson.

In addition, the Court finds that Wagenknecht is entitled to the entirety of his costs, even though this is a civil rights lawsuit. The federal claim against Wagenknecht was tenuous and it is highly doubtful that awarding costs in this case would have a chilling effect on other civil rights litigants. To the extent that Wagenknecht requested and received "condensed transcripts", those costs will also be taxed. "A defendant may choose how best to defend a lawsuit, and if the case is resolved in favor of the defense on a motion for summary judgment, then the defendant is presumptively entitled to costs." Hoekman, 41 F.4th at 979; Stanley v. Cottrell, Inc., 784 F.3d 454, 467 (8th Cir. 2015) (holding that, provided transcripts are necessary for the case, a prevailing party may be reimbursed for both a printed and electronic deposition transcripts). Plaintiff has not overcome the presumption in favor of awarding costs to a prevailing party. The Clerk of Court shall be directed to tax costs, in the amount of $8,759.84 in favor of Wagenknecht.

IV.     **Defendant Wagenknecht's Motion for Attorney's Fees (Doc. 221)**

Wagenknecht's request for attorney fees is a different matter. While the case against him was not strong, to say that the claims were frivolous and wholly without merit is a bridge too far.

Title 42 U.S.C. § 1988 provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorneys' fee as part of the costs" in civil rights actions. In order for a prevailing defendant to seek such fees, he must show that "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith," or that "plaintiff continued to litigate after it clearly became so." Christiansburg Garment Co. v. Equal Employment Opportunity Commission, 434 U.S. 412, 421-422 (1978). If a defendant makes such a showing, in cases such as this where there are other potentially viable claims, a defendant may "receive only the portion of his fees that he would not have paid but for the frivolous claim." Fox v. Vice, 563 U.S. 826, 836 (2011). In awarding fees, the "trial court may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." Id. 838. However, the Court must not engage in post hoc rationalization in awarding fees and should not award such fees if there is at least some basis for a plaintiff's suit. See Equal Employment Opportunity Commission v. CRST Van Expedited, Inc., 944 F.3d 750, 756 (8th Cir. 2019).

Wagenknecht argues that he is entitled to attorney fees because Plaintiff's claim that he unreasonably seized Daisy was frivolous, unfounded, and vexatious. Wagenknecht states that Plaintiff's federal claim against him is frivolous based on the Court's findings (Doc. 218) that:

1. Wagenknecht did not have direct contact with Plaintiff or Edward Nea

2. Plaintiff's argument that she alone could authorize any actions as to Daisy "defies reason, common sense, and case law."

3. No jury would accept that Nea did not have authority to determine Daisy's fate.

4. No jury would find that Wagenknecht's actions were unreasonable.

Wagenknecht also argues that Plaintiff vexatiously pursued her claims. To support this contention, Wagenknecht relies on the Court's skepticism as to the HomeAgain records, Plaintiff's

communication with the media in an attempt to "paint all defendants . . . in a bad light," and discovery delays.

Of all the Defendants in this suit, Plaintiff's claims against Wagenknecht were the weakest and he was not involved in the many discovery disputes and delays that plagued this case. However, it cannot be said with certainty that the claims against him were frivolous and baseless. He was part of the group of Defendants who seized and euthanized Daisy; and although he is entitled to qualified immunity on the federal claim against him, it was not baseless to assert that there may have been a question of fact as to whether Plaintiff or Edward Nea authorized Daisy's euthanasia. Moreover, as mentioned above, whether Plaintiff's reliance on the HomeAgain records was misleading was not critical to the Court's decision in this matter; and, there was no requirement that Plaintiff refrain from speaking to the press. While, in hindsight, the discovery disputes in this case led to delay and Plaintiff's federal claim against Wagenknecht was quite weak, this Court cannot find that the claim was frivolous, baseless, or unreasonable.

## V.     Conclusion

For the foregoing reasons, Defendant Philip Wagenknecht's Motion for Costs (Doc. 220) is **GRANTED**, Defendant Wagenknecht's Motion for Attorney Fees (Doc. 221) is **DENIED**, Defendant Wagenknecht's Motion to Alter Judgment (Doc. 225) is **DENIED**, and Plaintiff Bulfin's Motion for Relief and/or to Correct and Amend the Record (Doc. 223) is **DENIED**. The Clerk of Court is directed to tax costs, in the amount of $8,759.84, in favor of Defendant Wagenknecht and against Plaintiff.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of May, 2023